915 P.2d 300

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jesus Raymond GARCIA, Defendant–
Appellant.**

**No. 21876.**

Supreme Court of New Mexico.

April 3, 1996.

T. Glenn Ellington, Chief Public Defender, Sheila Lewis, Appellate Defender, Patrick Lopez, Assistant Appellate Defender, Santa Fe, for Appellant.

Tom Udall, Attorney General, Daniel F. Haft, Assistant Attorney General, Santa Fe, for Appellee.

## OPINION

FRANCHINI, Justice.

Jesus Raymond Garcia (Garcia) appeals the trial court denial of his motions to withdraw a guilty plea or in the alternative to reconsider the imposition of a life sentence. On appeal Garcia argues the trial court erred because his plea was not voluntarily, knowingly and intelligently given. Garcia argues several other errors, including that the trial court erroneously applied the sentencing provisions of the old children's delinquency code instead of the new code. Because the court's acceptance of Garcia's plea did not comply with the requirements of SCRA 1986, 5-303(E) (Repl.Pamp.1992) and such error affected Garcia's substantial rights, we hold that the trial court erred by refusing to allow Garcia to withdraw his plea.

*Facts and proceedings.* On February 7, 1993, 68 year-old Ester Reed was shot and killed when she interrupted a burglary at her home. Following an investigation into the killing, the police arrested Garcia. The initial proceedings against the seventeen year-old Garcia began in children's court with the filing of two separate petitions containing numerous allegations. The State charged Garcia with one count each of first degree murder, conspiracy to commit first degree murder, aggravated burglary with a deadly weapon, conspiracy to commit aggravated burglary, theft of a credit card, and residential burglary.

On June 22, 1993, Garcia entered into a stipulation with the State, which provided for the transfer of his case to adult district court. It further provided that Garcia would enter into a plea agreement with the State wherein he would plead guilty to first degree murder. In exchange, the State would agree to dismiss all remaining charges. In accordance with that stipulation, the children's court entered an order on June 22 transferring jurisdiction from the children's court to adult district court.[1]

On July 9, 1993, Garcia appeared before the trial court as an adult to be arraigned and to enter a plea. After Garcia signed a written plea and disposition agreement that provided he was pleading guilty to first degree murder, the court requested that he recount the factual basis for the plea. Following Garcia's recitation of the facts, however, the State expressed concern that it lacked the necessary factual basis to support the plea. The court then ascertained that Garcia did not understand felony murder, and it recessed to allow Garcia's attorneys to fully explain to Garcia all the elements of felony murder under *State v. Ortega,* 112 N.M. 554,

---

1. Though the Garcia's case was transferred to adult court, the same Children's Court Judge presided over it after the transfer.

817 P.2d 1196 (1991). After the recess, however, Garcia changed his plea to a first degree murder charge pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Though the *Alford* plea was contrary to the terms of the stipulation, the State approved of the *Alford* plea and agreed to set forth the factual basis in support of the new plea. To establish the factual basis, the State incorporated by reference the evidence introduced at Garcia's probable cause hearing. The trial court accepted the plea.

It is important to note that several events occurred between the June 22 hearing and the July 9 plea hearing. First, Garcia escaped from the juvenile detention center on June 23 and was recaptured one week later. The record indicates that as a result of his escape, the court was unable to expedite the plea and sentencing hearings, as requested by Garcia. Second, after Garcia was recaptured, the defense raised a new issue as to what law governed Garcia's sentence: the new Children's Code, NMSA 1978, Section 32A–2–20 (Repl.Pamp.1993), which took effect on July 1, 1993, or the "old code" in effect at the time the offense was committed, NMSA 1978, Section 31–18–14(A) (Repl. Pamp.1994). The court agreed to hear argument on this new issue and ordered the parties to submit briefs.

On August 3, 1993, Garcia appeared before the court for argument on the issue of what law governed the sentencing for the offense. Following counsels' argument, the court ruled that the "old code" applied. Garcia orally moved to withdraw his plea. The court denied that motion as untimely, but invited Garcia to file a written motion. Thereafter the court sentenced Garcia to a mandatory life sentence. Garcia then filed a written motion to withdraw his plea, which was heard and denied on November 8, 1993.

■ *Standard of review.* Garcia maintains that the trial court erred in refusing to allow him to withdraw his plea. A motion to withdraw a guilty plea is addressed to the sound discretion of the trial court, and we review the trial court's denial of such a motion only for abuse of discretion. *State v. Clark,* 108 N.M. 288, 292, 772 P.2d 322, 326,

*cert. denied,* 493 U.S. 923, 110 S.Ct. 291, 107 L.Ed.2d 271 (1989), *and habeas corpus granted,* 118 N.M. 486, 882 P.2d 527 (1994). A court abuses its discretion when it is shown to have "acted unfairly, arbitrarily, or committed manifest error." *State v. Kincheloe,* 87 N.M. 34, 36, 528 P.2d 893, 895 (Ct. App.1974). A denial of a motion to withdraw a guilty plea constitutes manifest error when the undisputed facts establish that the plea was not knowingly and voluntarily given. *Id.*

*Compliance with the procedural requirements of Rule 5–303(E).* New Mexico has long recognized that for a guilty plea to be valid it must be knowing and voluntary. *State v. Robbins,* 77 N.M. 644, 648, 427 P.2d 10, 12, *cert. denied,* 389 U.S. 865, 88 S.Ct. 130, 19 L.Ed.2d 137 (1967); *see also State v. Montler,* 85 N.M. 60, 61, 509 P.2d 252, 253 (1973); *State v. Lucero,* 97 N.M. 346, 349, 639 P.2d 1200, 1204 (Ct.App.1981), *cert. quashed,* 98 N.M. 51, 644 P.2d 1040 (1982); *State v. Martinez,* 89 N.M. 729, 732, 557 P.2d 578, 581 (Ct.App.), *cert. denied,* 90 N.M. 8, 558 P.2d 620 (1976). The procedures set forth in SCRA 5–303 are designed to ensure a guilty plea is made knowingly and voluntarily. *See State v. Martinez,* 92 N.M. 256, 258, 586 P.2d 1085, 1086 (1978) (explaining the importance of procedural safeguards to determine voluntariness of pleas). Garcia argues that his guilty plea was involuntary because it was the product of ineffective assistance of counsel and because the trial court failed to satisfy the requirements of Rule 5–303(E). We address only the second issue.

■ In pertinent part, Rule 5–303(E) provides:

E. Advice to defendant. The court shall not accept a plea of guilty, no contest or guilty but mentally ill without first, *by addressing the defendant personally in open court, informing the defendant of and determining that the defendant understands the following:*

(1) the nature of the charge to which the plea is offered;

(2) the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law

for the offense to which the plea is offered.

(Emphasis added.)

■ New Mexico's Rule 5-303 essentially codifies the United States Supreme Court mandate expressed in *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711-1712, 23 L.Ed.2d 274 (1969), which held that it was an error for the trial court to accept a guilty plea absent an affirmative showing on the record that the plea was voluntary and intelligent. *See State v. Vigil,* 85 N.M. 328, 333, 512 P.2d 88, 93 (Ct.App.1973) (holding "requirements for a voluntary guilty plea ... must affirmatively appear in the record"). The defendant must understand his guilty plea and its consequences. *Neller v. State,* 79 N.M. 528, 534, 445 P.2d 949, 955 (1968). For the record to reflect that the accused has the requisite knowledge of the consequences of the plea, it requires the accused has been informed of "the nature of the charges, acts sufficient to constitute the offense, the right to plead 'not guilty,' the right to a jury trial, the right to counsel, and the permissible range of sentences." *Montler,* 85 N.M. at 61, 509 P.2d at 253; *see also State v. Lucas,* 110 N.M. 272, 275, 794 P.2d 1201, 1204 (Ct.App.), *cert. denied,* 110 N.M. 260, 794 P.2d 734 (1990).

■ Paramount to our analysis is whether the record contains an affirmative showing that Garcia's plea was knowingly and voluntarily given. In the instant case, Garcia entered an *Alford* plea, which essentially allows a defendant "to plead guilty while simultaneously maintaining [his] innocence." *State v. Hodge,* 118 N.M. 410, 412 n. 1, 882 P.2d 1, 3 n. 1 (1994). Rule 5-303(E) prescribes the advice the court must give a defendant as a prerequisite to the acceptance of a plea of guilty. Consequently, this rule requires the court to give Garcia the same advice given when a plea of guilty is entered and also to ensure that the plea is knowing and voluntary.

The plea procedures in Rule 5-303(E) were adopted in 1974 and mirror Rule 11 of the Federal Rules of Criminal Procedure. *See* Fed.R.Crim.P. 11(c). In *McCarthy v. United States,* 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969), the Su-

preme Court explained that *full compliance* with Rule 11 serves the dual purpose of producing a complete record while simultaneously aiding the district judge in determining accurately whether the plea is truly voluntary. While the underlying purpose remains the same, the "strict compliance" requirement expressed in *McCarthy* was modified by the adoption of a harmless error provision in Rule 11. *See* Fed.R.Crim.P. 11(h). Under this provision, mere technical failure to comply with the federal plea requirements is harmless when noncompliance "does not affect substantial rights." *Id.*

■ Similarly, New Mexico's rule governing its plea procedures protects both the important rights of the defendant and ensures the proper administration of criminal law. Accordingly, New Mexico courts have consistently required its trial courts to comply with the prescribed plea procedures. *See Martinez,* 92 N.M. at 258, 586 P.2d at 1086 (explaining that failure to comply with procedures would be grounds for an appeal); *Lucero,* 97 N.M. at 350, 639 P.2d at 1204 (imposing responsibility upon trial courts to fully comply with the rule governing plea procedures). We hold, however, that absent a showing of prejudice to the defendant's right to understand his guilty plea and its consequences, substantial compliance* with Rule 5-303(E) is sufficient. Although the court must be certain the plea is knowing and voluntary, it is more reasonable to require substantial compliance rather than to require the trial courts to strictly adhere to a script. 2 Lester B. Orfield, *Orfield's Criminal Procedure Under the Federal Rules,* § 11:27 at 89-90 (2nd ed. 1985 & Supp.1995). We therefore review each case on its own unique facts and recognize that the court is not bound to a "strict [ ] unvarying formula of words." *See Montler,* 85 N.M. at 61, 509 P.2d at 253.

■ To ascertain what information the trial court communicated to Garcia, we examine the record. The State argues that based upon a review of the entire record, specifically including the June 22 transfer hearing and the November 8 hearing on Garcia's motion to withdraw his plea, the court substantially

complied with the requirements of Rule 5–303(E). However, the critical event is the taking of the plea. Rule 5–303(E) clearly contemplates the court advise the defendant at that time and *prior to accepting the plea.* In fact, SCRA 1986, 5–303(G) (Repl.Pamp. 1992) expressly provides for the making of the appropriate record of this proceeding and it reads in relevant part: "A verbatim record of the proceedings at which the defendant enters a plea shall be made and, if there is a plea of guilty ... the record shall include, without limitation, the court's advice to the defendant." *See also, McCarthy,* 394 U.S. at 465, 89 S.Ct. at 1170 ("[T]he rule is intended to produce a complete record at the time the plea is entered"); *United States v. Kamer,* 781 F.2d 1380, 1385 (9th Cir.), *cert. denied,* 479 U.S. 819, 107 S.Ct. 80, 93 L.Ed.2d 35 (1986) (holding the Rule 11 noncompliance claims are resolved solely on basis of transcript of plea proceedings and not the record of the entire criminal proceedings).

We therefore begin with the July 9th plea hearing. We review the record of that hearing to determine whether it contains the necessary showing that Garcia made a knowing and voluntary plea within the meaning of the New Mexico case law.

Before accepting the plea, the court asked Garcia if he had taken any drugs or medication, if he had time to discuss the matter with his attorneys, and if he was satisfied with their advice. The court also informed Garcia that by entering a plea he was giving up the right to trial by jury, the right to remain silent, and the right to an appeal. The court, however, did not ascertain if Garcia understood the nature of the charge and the possible range of penalties provided by law, as required by Rule 5–303(E)(1) and (2). Upon the present transcript, the record is unclear as to whether Garcia fully understood his plea or its consequences. Accordingly, we do not discern substantial compliance with 5–303(E) and therefore conclude that the claimed errors are not harmless.

 When a defendant pleads guilty, he is admitting to "all the elements of a formal criminal charge." *McCarthy,* 394 U.S. at 466, 89 S.Ct. at 1170–71. The plea agreement provided that Garcia agreed to plead guilty pursuant to *North Carolina v. Alford* to first degree murder as set forth in Count I of the Information. Count I charged Garcia with felony murder pursuant to NMSA 1978, Section 30–2–1(A)(2), or in the alternative, intentional murder pursuant to NMSA 1978, Section 30–2–1(A)(1). At one point during the hearing, Garcia expressed confusion as to the charge of first degree murder and specifically asked the trial court if murder in the first degree is the same charge as felony murder. The court answered in the affirmative, but it did not explain the elements of either felony murder or the alternative charge of intentional murder. Only when the State expressed its concern regarding the existence of a factual basis to support the plea, the court determined Garcia was still confused about the charge of felony murder. The court then recessed to allow the attorneys to explain it to Garcia. When the hearing continued, however, the court failed to ascertain whether Garcia's misunderstanding of the nature of felony murder had been sufficiently corrected. *See* Rule 5–303(E)(1). Nor did the defense attorneys represent to the court that Garcia actually understood the elements of the crime.

 Although the court did recess to allow Garcia's attorneys to explain the charges, the court must still ensure a showing *on the record* that the defendant had the necessary information. To document such a showing, the court may advise the defendant directly. *See* 2 Wayne R. Lafave, *Criminal Procedure* § 20.4 at 642 (1984 & Supp.1991) (citing 3 ABA Standards for Criminal Justice, § 14–1.4(a)(i) (2d ed. 1980)) (noting the better practice is for the court to inform the defendant). The Committee Commentary to Rule 5–303(E) provides that upon informing the defendant under this rule "[t]he trial judge may want to refer to the essential elements in UJI Criminal, particularly when they have not been set out in the accusatory pleading." *State v. McCrary,* 100 N.M. 671, 673, 675 P.2d 120, 122 (1984) (stating committee commentary constitutes persuasive authority). However, "due process is denied only if the defendant was actually unaware of the nature of the charge." *Lafave,* § 20.4, at

643 (1984) (citing to *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). Therefore, we hold that provided the record shows the defendant had the requisite information, the court need not be the only source of that information.

In the present case, the accusatory pleading did not specify the elements of the charge of felony murder or intentional murder, and "intent to kill" clearly constitutes an essential element of the alternative charges. *See Henderson*, 426 U.S. 637, 96 S.Ct. 2253 (holding defendant must be informed of the essential element of "intent to kill" where it is an element of the charge); *see also* Committee Commentary R. 5–303(E) (citing *Henderson* for same proposition).

The State argues that the record of the November 8 hearing, at which Garcia moved to withdraw his plea, contains evidence that Garcia understood the nature of the charge to which he had entered an *Alford* plea. The State notes that both counsel testified that one of them discussed with Garcia the leading case concerning the relevant element of felony murder, which is *State v. Ortega*, 112 N.M. at 554, 817 P.2d at 1196. However, that showing falls short of demonstrating during the recess the trial judge allowed on July 9 that counsel had dispelled the confusion Garcia expressed prior to recess. Absent clarification of Garcia's understanding following the recess, we cannot conclude that his plea was knowing and voluntary under our cases.

Garcia next contends that the court did not inform Garcia of any mandatory minimum and maximum penalties or the maximum possible penalty associated with his plea. *See* Rule 5–303(E)(2). Although the trial court acknowledged that "technically the child was not specifically advised of his exposure when the plea was taken," it nonetheless concluded that, based upon the entire record, Garcia was aware of the potential consequences. We disagree.

In the instant case, the record is ambiguous as to what Garcia understood regarding his potential exposure. Neither the court nor the plea agreement specified the possible sanctions or penalties Garcia would incur, as an adult, as a result of his plea. Moreover, the relevant information regarding the poten-

tial consequences was unavailable at the time of the plea hearing. At that stage of the proceedings, neither the court nor the parties knew what law would govern the permissible range of penalties in Garcia's case. In fact, argument on that issue was scheduled to be heard in August, one month after the July 9 plea hearing. In light of the unresolved debate regarding the application of the old or new sentencing provisions of the Children's Code, the court could not and did not advise Garcia of the possible penalties prior to accepting his plea.

We are not persuaded by the State's argument that the court's dialogue with Garcia at the June 22 hearing regarding the possible penalties substantially fulfilled the 5–303(E) requirements. As we discussed previously, *the defendant must understand the consequences of his plea at the time the plea is taken.* In this case, the consequences of the plea were placed at issue after June 22. At the time of the June 22 hearing, the crucial issue of the law of the case had not yet been raised.

■ Failure to advise a defendant of the potential penalties presumptively affects defendant's substantial rights and renders the plea unknowing and involuntary. *See Montler*, 85 N.M. at 60, 509 P.2d at 252 (holding that accused should be informed of maximum possible sentence and minimum mandatory sentence); *State v. Sisneros*, 98 N.M. 201, 202–03, 647 P.2d 403, 404–05 (1982) (holding that when defendant's guilty plea is involuntary because he is erroneously informed of the consequences, the correct remedy is to allow him to withdraw it). Federal courts have similarly held that Federal Rule 11 requires that defendant must be sufficiently informed as to the potential penalties. *See United States v. McCann*, 940 F.2d 1352, 1358 (10th Cir.1991) (holding court's failure to advise defendant of mandatory minimum sentence renders plea involuntary and entitled defendant to plead anew); *United States v. Williams*, 919 F.2d 1451, 1456 (10th Cir. 1990) (same), *cert. denied*, 499 U.S. 968, 111 S.Ct. 1604, 113 L.Ed.2d 667 (1991).

*Conclusion.* As a result of the trial court's failure to substantially comply with Rule 5–

303(E)(1) and (2) prior to the accepting the guilty plea, the record does not affirmatively show that Garcia's plea was knowingly and voluntarily given. Accordingly, we reverse and remand with instructions to the trial court to allow Garcia to withdraw his plea. Allowing Garcia to withdraw his plea effectively disposes of Garcia's other claimed errors. While the question of whether Garcia's sentence should be upheld is no longer at issue, for the purposes of judicial economy, we conclude that the trial court correctly applied the provisions of the old code or the code that was in effect at the time the offense was committed.

**IT IS SO ORDERED.**

RANSOM and MINZNER, JJ., concur.