921 P.2d 316

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**David LOZANO, Defendant–Appellant.**

**Nos. 16491, 17212.**

Court of Appeals of New Mexico.

June 10, 1996.

Certiorari Denied July 11, 1996.

T. Glenn Ellington, Chief Public Defender and Karl Erich Martell, Assistant Appellate Defender, Santa Fe, for Appellant.

Tom Udall, Attorney General and Marcia J. Milner, Assistant Attorney General, Santa Fe, for Appellee.

## OPINION

DONNELLY, Judge.

1. Defendant appeals his convictions and sentences imposed following a jury verdict finding him guilty of making or permitting a false public voucher and fraud. He also appeals his convictions and sentences imposed in a separate case following his entry into a plea and disposition agreement, and plea of no contest, admitting the charges of paying

or receiving public money for services not rendered, and conspiracy to commit paying or receiving public money for services not rendered. On this Court's own motion we have consolidated the two appeals. We discuss the following issues: (1) whether the trial court erred in denying Defendant's motion to withdraw his no contest plea and plea agreement, and (2) whether sufficient evidence exists to support the jury verdicts. We affirm in part and reverse in part.

*FACTS*

2. In August 1993 Defendant was employed by Dona Ana County (the County) as the County Road Supervisor. His convictions in Dona Ana District Court Cause No. CR–94–183, following a jury trial, grew out of allegations that he had Goodyear Tire Co. (Goodyear) install new wheel rims on his privately-owned truck and bill the cost of the rims and installation charges to the County under a false invoice. Joe Ikard, a Goodyear employee, testified that Defendant asked him for an estimate of the cost of fifteen-inch rims for Defendant's personal truck. Ikard wrote up an estimate and the rims subsequently were ordered by the County as a public purchase but were in fact installed on Defendant's privately-owned truck.

3. Subsequently, Ikard read a newspaper article alleging that Defendant had bought wheel rims for his private truck and had charged them to the County. On the same day Ikard read the article, Defendant contacted Ikard and told him to charge the wheel rims and installation costs to his personal account. A store meeting was held; Ikard testified that after reviewing the store's records, Goodyear concluded that a billing error had not occurred. Later that same day, Defendant came in and personally paid the bill, and the billing to the County was voided. The original bill, however, had already been sent to the County. The invoice identified the truck for which the wheel rims had been ordered as County unit TR–201–A, a County-owned 1993 Chevrolet truck. Ikard also testified that the County's truck took sixteen-inch wheel rims, not fifteen-inch rims.

4. Another Goodyear employee, Mike Barnes, testified that Defendant had first inquired about sixteen-inch wheel rims, and then subsequently inquired about fifteen-inch wheel rims. Barnes stated that Defendant gave him a County purchase order for fifteen-inch wheel rims. On the day the rims were installed, Barnes billed the County for the work and placed the invoice bill in a file for County employees Nick Frietze or Larry Perez to sign.

5. Larry Perez, an employee in the Dona Ana County Parts Department, signed the invoice. Perez's job duties included signing and collecting Goodyear invoices and submitting them to the County's purchasing office for payment. Nora Oliver, an inventory control clerk for the County Road Department, testified that her supervisor, Nick Frietze, instructed her to fill out a work order for the rims and for balancing Defendant's County-owned truck, and told her that Larry Perez had approved the work order. She stated that Perez's signature was sufficient to cause her to authorize a payment voucher from the County. Oliver also testified that she did not understand why a new county truck would need new wheel rims. Frietze testified that Defendant had been assigned a 1993 Chevrolet truck for County use and that Defendant had asked him to make a work order authorizing the installation of new wheel rims on the County truck assigned to Defendant. Frietze testified that Perez signed the invoice.

6. Following his conviction after a jury trial in Cause No. CR–94–183, Defendant entered into a plea and disposition agreement in a separate case, Cause No. CR–94–184. He pled no contest to Counts 1 and 15, which were part of a thirty-count criminal information, in return for the dismissal of the other counts. Count 1 charged Defendant with paying or receiving public money for services not rendered, and Count 15 charged Defendant with conspiring with Pedro Portillo to commit paying or receiving public money for services not rendered. The conspiracy count related to the acts alleged in Counts 1 through 4 and 6 through 13. Prior to sentencing, Defendant moved to withdraw his no contest plea in Cause No. CR–94–184 on the grounds that he was not put on notice or advised that he would have to pay restitution

exceeding the amount of $322 as alleged in Count 1, and because he did not agree to pay a higher amount. The presentence report requested by the trial court recommended that Defendant be required to pay restitution in the amount of $39,510.24. The amount of restitution recommended in the presentence report was apparently calculated by totalling the losses alleged to have been sustained by the County in each of the thirty counts contained in the criminal information.

7. Although admitting that the amounts of restitution listed in the presentence report were in part duplicitous, the State opposed Defendant's motion to withdraw his plea and argued that because Defendant pled guilty to conspiracy he was subject to the payment of restitution for each of the offenses resulting from the criminal conspiracy. The trial court denied Defendant's motion to withdraw his plea agreement. Thereafter, the trial court consolidated Cause Nos. CR–94–183 and CR–94–184 for sentencing, and sentenced Defendant to serve a term of eighteen months in prison and additionally imposed several fines which were subsequently suspended. The trial court also ordered that Defendant be held jointly and severally liable with a co-defendant, Pedro Portillo, for the payment of restitution in the amount of $13,-133.40.

*MOTION TO WITHDRAW PLEA AGREEMENT*

8. Defendant argues that the trial court erred in denying his motion to withdraw his plea and disposition agreement in Cause No. CR–94–184 because he was not put on notice by the trial court at the time he entered into the agreement of the possible amount of restitution he could be subjected to, because his attorney advised him that he would only be required to pay restitution in the amount of $322 as specified in Count 1, and because the amount of restitution ordered by the trial court involved alleged criminal conduct which he did not admit having committed, and matters which arose out of criminal charges that the State agreed to dismiss.

9. The decision of whether a defendant should be permitted to withdraw a plea is discretionary with the trial court; thus, on appeal we review the trial court's ruling to determine whether, under the facts offered in support of the motion, the trial court abused its discretion. *See State v. Garcia,* 121 N.M. 544, 546, 915 P.2d 300, 302 (1996); *State v. Clark,* 108 N.M. 288, 292, 772 P.2d 322, 326, *cert. denied,* 493 U.S. 923, 110 S.Ct. 291, 107 L.Ed.2d 271 *reh'g denied,* 493 U.S. 998, 110 S.Ct. 555, 107 L.Ed.2d 551 (1989), *and habeas corpus granted,* 118 N.M. 486, 882 P.2d 527 (1994).

10. In enacting NMSA 1978, Section 31–17–1(A) (Repl.Pamp.1994), relating to the imposition of restitution, the legislature has declared that "[i]t is the policy of this state that restitution be made by each violator of the Criminal Code to the victims of his criminal activities to the extent that the defendant is reasonably able to do so." Under this statute, restitution includes all damages "which a victim could recover against the defendant in a civil action arising out of the same facts or event, except punitive damages and damages for pain, suffering, mental anguish and loss of consortium." Section 31–17–1(A)(2); *see also State v. Platt,* 114 N.M. 721, 725, 845 P.2d 815, 819 (Ct.App.), *cert. denied,* 114 N.M. 501, 841 P.2d 549 (1992).

11. We agree with Defendant that under Section 31–17–1 he may not be required to make restitution for any offense for which (1) he has not been either convicted of committing, (2) admitted his guilt to, or (3) for which he has not consented to pay restitution. *See* § 31–17–1(A)(3) & (4) (restitution includes full or partial payment of actual damages to a victim for a crime which there is plea of guilty or verdict of guilty, and any other crime which is admitted or not contested by a defendant); *State v. Madril,* 105 N.M. 396, 397, 733 P.2d 365, 366 (Ct.App.1987) (term "criminal activities," as used in Section 31–17–1(A)(3) relating to victim restitution, includes "any crime for which there is a guilty plea or guilty verdict and 'any other crime ... which is admitted or not contested.'" (emphasis omitted)); *see also Erickson v. State,* 107 Nev. 864, 821 P.2d 1042, 1043 (1991) (defendant may be ordered to pay restitution for offense he or she has admitted, to which he or she has been found guilty, or upon which he or she has agreed to pay restitution).

**12.** A judgment and sentence imposing restitution following entry of a plea and disposition agreement is subject to challenge, unless a defendant has been given adequate notice that restitution may be imposed, the amount of possible restitution, and the defendant is accorded an opportunity to controvert the amount of possible restitution. *See State v. Lack,* 98 N.M. 500, 507–08, 650 P.2d 22, 29–30 (Ct.App.), *cert. denied,* 98 N.M. 478, 649 P.2d 1391 (1982); *see also Fee v. State,* 656 P.2d 1202, 1206 (Alaska Ct.App.1982); *People v. Johnson,* 780 P.2d 504, 507–08 (Colo.1989) (en banc).

13. Counts 1 through 14 of the criminal information in Cause No. CR–94–184 consisted of fourteen separate charges, each alleging that Defendant knowingly caused public money to be paid to Portillo's Body Shop for personal services that were not, in fact, rendered, contrary to NMSA 1978, Section 30–23–2 (Repl.Pamp.1994). Each count specifically referred to different acts allegedly perpetrated by Defendant and indicated the date each offense purportedly occurred.

14. The State argues that because Defendant also pled no contest to Count 15 in Cause No. CR–94–184 charging him with conspiring with a co-defendant, Pedro Portillo, between the dates of *April 23, 1993,* and *August 10, 1993,* to the offense of paying or receiving public money for services not rendered, Defendant may be required to pay restitution for each of the offenses covered in Counts 1 through 14 because these acts grew out of and were the subject of the conspiracy.

15. The State contends that, when a defendant is convicted of the offense of conspiracy, the sentencing judge may properly require the payment of restitution unless restricted by statute for the amount of losses sustained by a victim or victims and which losses were caused by the conspiracy. *See United States v. Brewer,* 983 F.2d 181, 184–85 (10th Cir.) (defendants convicted of conspiracy to commit mail fraud were properly required to pay restitution for entire amount of loss suffered by manufacturers as result of conspiracy), *cert. denied,* 508 U.S. 913, 113 S.Ct. 2348, 124 L.Ed.2d 257 (1993); *United States v. Clark,* 957 F.2d 248, 253 (6th Cir. 1992) (indicating that if the defendant had

been convicted of conspiracy to commit all counts charged in indictment, he could have been ordered to pay restitution for all counts charged in indictment); *United States v. Sharp,* 941 F.2d 811, 815 (9th Cir.1991) (restitution may be ordered for acts done in furtherance of a conspiracy); *United States v. Burger,* 770 F.Supp. 598, 604 (D.Kan.1991) (for restitution purposes, it is proper to consider all losses caused by a conspiracy), *aff'd,* 968 F.2d 21 (1992), *and cert. denied,* 507 U.S. 959, 113 S.Ct. 1382, 122 L.Ed.2d 758 (1993); *see also Madril,* 105 N.M. at 397, 733 P.2d at 366 (victims are entitled to restitution when there is a direct causal relationship between the criminal activities of a defendant and damages to which the victim suffers).

**16.** Although we agree with the State that the trial court, pursuant to Section 31–17–1, may order a defendant to make restitution to the victim of a criminal conspiracy for losses resulting from such conspiracy, nevertheless, where the State intends to seek restitution based on charges that have been dismissed under a plea and disposition agreement, the defendant must be placed on notice that he will be subject to the payment of restitution, and should be advised at the time of the entry of his plea of the amount of restitution sought by the State. *Fee,* 656 P.2d at 1206 (defendant must be given notice of amount of restitution claimed); *State v. Crowder,* 155 Ariz. 477, 747 P.2d 1176, 1181 (1987) (en banc) (knowledge of amount of restitution that may be imposed is relevant and material to validity of plea agreement); *see also Johnson,* 780 P.2d at 507 (defendant entitled to adequate notice of claimed damages and amount of restitution sought).

17. In the instant case, neither the plea and disposition agreement nor the record of the proceedings, at which the plea and disposition agreement was accepted, contain any reference to the fact that restitution would be required for matters arising from charges which the State agreed to dismiss, nor does the record of such hearing make any reference to a specific amount of restitution that Defendant could be required to pay. *See State v. Vigil,* 85 N.M. 328, 333, 512 P.2d 88, 93 (Ct.App.1973) (advice to defendant con-

cerning consequences of guilty plea must affirmatively appear in record). Moreover, absent an agreement by Defendant, his plea of no contest to the charge of conspiracy did not permit the trial court to order restitution for any offense which was outside the dates covered by the conspiracy. Count 15 of the criminal information alleged that the dates of the conspiracy were between April 23, 1993, and August 10, 1993. The offense alleged in Count 5 of the criminal information purportedly occurred on August 13, 1993, and is outside the dates of the conspiracy charge. *Cf. Garcia*, 121 N.M. at 546–47, 915 P.2d at 302–03 (record must affirmatively indicate that defendant understands consequences of plea admitting guilt).

■ 18. We conclude that the trial court erred in denying Defendant's motion to withdraw his plea in Cause No. CR–94–184 where the record fails to indicate that, at the time of entry of his plea, Defendant was given any notice that he would be required to make restitution for losses arising out of the charges which the State agreed would be dismissed, and absent an express showing that Defendant has agreed to the payment of such restitution. If a defendant is not adequately notified of the material consequences of his or her plea, and such information is relevant to defendant's decision to enter into such plea, and thereafter defendant seeks to withdraw his or her plea, he or she should be allowed to do so. *See State v. Smith*, 110 N.M. 534, 536, 797 P.2d 984, 986 (Ct.App.), *cert. denied*, 110 N.M. 533, 797 P.2d 983 (1990); *see also State v. Gibson*, 96 N.M. 742, 743, 634 P.2d 1294, 1295 (Ct.App.1981) ("[A] plea [agreement] stands or falls as a unit."); *Crowder*, 747 P.2d at 1180 (defendant should not be permitted "to vacate a plea bargain unless the information he lacked was actually relevant to the decisionmaking process").

## SUFFICIENCY OF THE EVIDENCE

■ 19. Defendant argues that the evidence presented in Cause No. CR–94–183 was insufficient to support the jury verdicts finding him guilty of making or permitting a false public voucher and fraud. He raises this issue pursuant to *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), and

*State v. Boyer*, 103 N.M. 655, 658–60, 712 P.2d 1, 4–6 (Ct.App.1985). In analyzing a sufficiency of the evidence issue, we inquire whether sufficient evidence exists of either a direct or circumstantial nature to support a verdict of guilty beyond a reasonable doubt with respect to each essential element of the crimes charged. *See State v. Duran*, 107 N.M. 603, 605, 762 P.2d 890, 892 (1988). We view the evidence in the light most favorable to the verdict, resolving all conflicts therein and indulging all reasonable inferences therefrom in the light most favorable to the judgment. *See State v. Garcia*, 114 N.M. 269, 273, 837 P.2d 862, 866 (1992). "It is for the trier of fact to determine the weight and sufficiency of the evidence, including all reasonable inferences." *State v. Vialpando*, 93 N.M. 289, 292, 599 P.2d 1086, 1089 (Ct.App.), *cert. denied*, 93 N.M. 172, 598 P.2d 215 (1979).

■ 20. Defendant's conviction for making or permitting a false public voucher requires proof that Defendant knowingly, intentionally, or willfully made, or caused to be made, a false material statement; that such statement was on a public voucher or an invoice supporting a public voucher; and that the voucher or invoice was made with the intent that it be relied upon for the expenditure of public money. *See* NMSA 1978, § 30–23–3 (Repl.Pamp.1994).

■ 21. Defendant's conviction for fraud requires that Defendant misrepresented a fact to the County with intent to deceive or cheat the County; that because of such misrepresentation Defendant obtained services; that the services had a market value over $250; and that such services belonged to someone other than Defendant. *See* NMSA 1978, § 30–16–6 (Repl. Pamp.1994).

22. In the present case evidence was presented that Defendant had Goodyear install new wheel rims on his personal truck, but had such services billed to the County under a false invoice. Defendant ordered wheel rims from Goodyear for County unit No. TR–201–A and represented to the County that his County truck No. TR–201–A needed new wheel rims. Instead of having the wheel

rims installed on his County truck, however, Defendant had the rims installed on his personal truck. Our review of the record indicates ample evidence from which the fact finder could reasonably determine that Defendant committed each element of the charged offenses. *See State v. Sparks,* 102 N.M. 317, 320, 694 P.2d 1382, 1385 (Ct.App. 1985).

23. Although Defendant personally paid for the wheel rims following publication of a newspaper story indicating that Defendant misapplied public monies, the jury could properly find that the criminal acts had already been completed when Defendant picked up his truck after the rims had been installed by Goodyear. *See, e.g., State v. Clifford,* 117 N.M. 508, 512, 873 P.2d 254, 258 (1994) ("[A] criminal conviction for fraud does not require that the victim suffer a pecuniary loss."). Further, even though Defendant contended that Goodyear employees made a billing mistake, the testimony of Ikard and Barnes contradicted Defendant's version of the transaction. *See State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988) (the fact finder may reject a defendant's version of an incident). Our review of the evidence reveals that there is substantial evidence, both direct and circumstantial, to support the jury verdict that Defendant was guilty of each essential element of making or permitting a false public voucher and fraud.

*CONCLUSION*

24. Defendant's convictions in Cause No. CR–94–183 are affirmed. We reverse the trial court's order denying Defendant's motion to withdraw his plea of no contest in Cause No. CR–94–184, and remand for further proceedings consistent with this opinion.

25. IT IS SO ORDERED.

ALARID and FLORES, JJ., concur.