This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                      **No. 32,860**

**CHRIS GARCIA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Kenneth H. Martinez, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Sri Mullis, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Public Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**KENNEDY, Judge.**

**{1}** The district court determined that Chris Garcia (Defendant) was competent to stand trial for charges of criminal sexual penetration of a minor (CSPM), criminal sexual contact with a minor (CSCM), and bribery. Defendant later pled guilty, and the district court sentenced him to twelve years.

**{2}** Defendant appeals, challenging the competency determination as well as the district court's refusal to reconsider sentence. Defendant also claims he received ineffective assistance of counsel. For the reasons discussed below, we affirm.

## I. PROCEDURAL HISTORY

**{3}** Defendant was charged with two counts CSPM, two counts of CSCM, and one count of bribery. Approximately one year later, Defendant filed a motion to dismiss due to lack of competence, but filed it pursuant to NMSA 1978, Section 31-9-1.6 (1999), which deals with determinations of mental retardation. Defendant withdrew his Section 31-9-1.6 motion, filing a motion to dismiss pursuant to NMSA1978, Section 31-9-1.2 (1999), which governs competency determinations, in its stead. The district court entered an order staying proceedings to allow for a competency determination.

**{4}** Defendant was evaluated by Doctor Westfried. The district court then held a competency hearing, during which it heard from Doctor Eric Westfried and Doctor John Burness, who reviewed Doctor Westfried's evaluation but did not work directly

with Defendant. Based on the testimony of these two experts, the district court found Defendant competent to stand trial. Defendant filed a motion to reconsider the finding of competency or, alternatively, to order another competence evaluation. The district court granted the motion in part by issuing an order for an independent evaluation. This evaluation was conducted by Doctor James Harrington. Based on the results of Doctor Harrington's evaluation, Defendant filed a motion to reconsider the order finding him competent, and he also requested a hearing to determine mental retardation pursuant to Section 31-9-1.6.

{5} The district court held another evidentiary hearing on competency, this time also considering the mental retardation issue. At this hearing, the district court heard testimony solely from Doctor Harrington. After the hearing, and pursuant to the court's request, the parties submitted proposed findings of fact and conclusions of law. The district court then issued an order finding Defendant competent to stand trial and not mentally retarded.

{6} Eventually, Defendant entered into a plea agreement. The plea required that a minimum of five years and a maximum of eighteen years be spent in the department of corrections. The district court accepted the plea and sentenced Defendant to twelve years in the department of corrections. Approximately one week later, Defendant filed a motion to reconsider his sentence based on a conversation between the district court

judge, State's counsel, and defense counsel that was held off the record in the judge's chambers prior to Defendant entering his plea. Defendant asserted that defense counsel advised him to take the plea because the judge expressed an inclination to sentence Defendant to the minimum five years set forth by the agreement.

{7}     The district court held an evidentiary hearing on Defendant's motion to reconsider. Both parties submitted proposed findings of fact and conclusions of law on the sentencing issue. The district court denied Defendant's motion and adopted the State's findings and conclusions during a subsequent hearing. The district court later issued a written order denying Defendant's motion to reconsider. We address additional facts as necessary to each issue discussed below.

## II.     DISCUSSION

{8}     Defendant asserts that the district court erred in finding him competent to stand trial and suggests that the district court should have found him to be mentally retarded according to Section 31-9-1.6. Defendant also asserts that the district court abused its discretion by denying his motion to reconsider sentence. In the alternative, Defendant asks that he be permitted to withdraw his plea because he received ineffective assistance of counsel in the plea bargaining process. We address each issue in turn.

### A.     Competence to Stand Trial

### 1.     Standard of Review

4

**{9}** Defendant asks us to review Defendant's competency determination as a mixed question of law and fact, requiring both sufficiency and de novo determinations. In support, however, Defendant points to no precedent in which an appellate court in New Mexico has deemed a competency determination to be a mixed question of law and fact. Instead, our courts consistently review competency determinations for an abuse of discretion. Defendant argues that prior cases incorrectly applied an abuse of discretion standard by relying on *State v. Duarte*, 1996-NMCA-038, ¶ 13, 121 N.M. 553, 915 P.2d 309 (reviewing the judge's determination of whether competency issue should be submitted to jury for abuse of discretion). Defendant's argument, however, ignores *State v. Lopez*, 1978-NMSC-060, ¶ 3, 91 N.M. 779, 581 P.2d 872, in which our Supreme Court acknowledged that a trial judge's determination of competency was subject to review for abuse of discretion.

**{10}** Because we are bound by our Supreme Court's precedent and because Defendant presents us with no precedent to suggest we do otherwise, we review the district court's competency determination for an abuse of discretion. *Id.* ¶ 3; *State v. Noble*, 1977-NMSC-031, ¶ 7, 90 N.M. 360, 563 P.2d 1153. In reviewing for an abuse of discretion, we view the evidence in the light most favorable to the judge's decision, and affirm unless the ruling below is "clearly against the logic and effect of the facts and circumstances of the case." *State v. Rael*, 2008-NMCA-067, ¶ 6, 144 N.M. 170,

5

184 P.3d 1064 (internal quotation marks and citation omitted).

**2.  Competency Standard**

{11}  A defendant is presumed competent to stand trial. *Id.* "It is a violation of due process to prosecute a defendant who is incompetent to stand trial." *State v. Flores*, 2005-NMCA-135, ¶ 16, 138 N.M. 636, 124 P.3d 1175 (alteration, internal quotation marks, and citation omitted). To overcome the presumption of competence, a criminal defendant "bears the burden of proving by a preponderance of the evidence that he or she is incompetent to stand trial[.]" *State v. Chavez*, 2008-NMSC-001, ¶ 23, 143 N.M. 205, 174 P.3d 988; UJI 14-5104 NMRA comm. cmt. A person is competent to stand trial when he "understands the nature and significance of the proceedings, has a factual understanding of the charges, and is able to assist his attorney in his defense." *State v. Najar*, 1986-NMCA-068, ¶ 8, 104 N.M. 540, 724 P.2d 249; UJI 14-5104. Competence to stand trial and competence to plead guilty are governed by the same standard. *State v. Herrera*, 2001-NMCA-073, ¶ 31, 131 N.M. 22, 33 P.3d 22; *Duarte*, 1996-NMCA-038, ¶ 22 (citing *Godinez v. Moran*, 509 U.S. 389, 400-03 (1993)); *State v. Lucas*, 1990-NMCA-056, ¶¶ 13-15, 110 N.M. 272, 794 P.2d 1201. The evidence that supports the district court's determination as to Defendant's competence is set forth below.

**3.  Defendant's Understanding of the Nature of the Proceedings Against Him**

{12}     Doctor Westfried, Doctor Burness, and Doctor Harrington each testified regarding Defendant's understanding of the nature of the proceedings against him. According to their testimony, Defendant expressed an understanding that defendants do not have to testify in their own cases. He also expressed an understanding of the adversarial nature of our court system by acknowledging that the district attorney would try to prove him guilty and that he should consult with his lawyer in the event he came across anything that he did not understand in court. Defendant knew the roles of both the judge and the jury in his case. Defendant understood that if he disagreed with his attorney or was not satisfied with his attorney, he could get a new attorney to represent him. He also explained what confidentiality between himself and his attorney meant. He understood that the court exists to decide guilt and that a guilty verdict could result in punishment. He even gave an accurate, though rudimentary, explanation of the nature of a plea agreement.

**4.     Defendant's Understanding of the Nature of the Charges Against Him**

{13}     The doctors who examined Defendant and his files also testified regarding Defendant's understanding of the charges against him. For instance, Defendant understood that a felony is a more serious offense than a misdemeanor. Defendant was able to recall from memory the charges against him. He understood that he had first, second, and third degree felony charges pending against him. Defendant even

7

communicated to Doctor Westfried that he believed he had three third degree felony offenses pending against him, and expressed concern and confusion as to why there were so many of those charges, believing there should only be one. In reality, Defendant was only charged with one third degree felony, which confirms that Defendant's impression of the charges against him was correct. Defendant understood the elements of the crimes he was accused of and had a factual understanding of the charges against him. Defendant expressed an understanding that his charges were serious and that the penalty for his charges could be "many years" in jail. Defendant was also able to explain what probation was and what would happen if he violated probation.

**5.    Defendant Can Assist Counsel With His Defense**

{14}    There was also testimony to suggest that Defendant would be able to assist defense counsel with his defense. Doctor Harrington's evaluation did not contain a discussion of Defendant's understanding of his possible defenses to the charges against him; Doctor Westfried's did. Defendant understood that if a witness were lying about him in the courtroom, he should tell his lawyer. Defendant identified which witnesses he believed were most likely to lie in the courtroom. He also acknowledged that he is expected to tell his attorney everything that he knows and remembers about the case.

**6.      Conclusions Regarding Competency**

{15}      Doctor Westfried felt that, although Defendant would not be able to stand trial without feeling overwhelmed and anxious to the point that his cognitive functions were impaired, he could potentially be competent to enter a plea agreement. We note that competence to stand trial and competence to plead guilty are governed by the same standard. *Herrera*, 2001-NMCA-073, ¶ 31; *Duarte*, 1996-NMCA-038, ¶ 22; *Lucas*, 1990-NMCA-056, ¶¶ 13-15. Doctor Burness opined that if the court adopted an appropriate pace and defense counsel gave adequate support and structure to assist Defendant during the trial, Defendant could be able to participate in and understand the trial proceedings, thereby potentially rendering him competent to stand trial.

**7.      Other Considerations**

{16}      There was also evidence regarding malingering, Defendant's literacy, and Defendant's behavior that aids our analysis of whether the district court abused its discretion. Some evidence suggested that Defendant may have been malingering. For example, the Miller Forensic Assessment of Symptoms Test (M-FAST) that Doctor Westfried administered indicated that Defendant's self-reporting was unreliable and showed support for the conclusion that Defendant was feigning mental illness. Doctor Burness noted that Defendant did not present himself in a negative, suffering manner prior to arrest, but did so after his arrest, suggesting deliberate distortion. She also

9

suggested that Defendant's M-FAST results support a conclusion that Defendant attempted to distort the results by feigning mental illness. Doctor Harrington did not test Defendant for malingering.

{17}     There was also some debate over whether Defendant was functionally illiterate. While Doctors Westfried and Harrington concluded that Defendant was illiterate, they both conceded that Defendant can read and write simple sentences. In fact, the Mini-Mental Status Examination that Doctor Westfried administered gave written prompts that Defendant was expected to read. It also required Defendant to give written responses in sentence form that contained a subject and a verb. Defendant scored a twenty-seven out of a possible thirty points on that examination; a score of twenty or below is indicative of cognitive impairment.

{18}     The district court was also able to observe Defendant's behavior during a videotaped police interview and during numerous court appearances. Doctor Harrington conceded that Defendant was more clear and understandable during the police interview than during his competency evaluations. The district court observed that Defendant was attentive throughout each of his district court hearings.

**8.     The Fact Finder May Reject Expert Testimony**

{19}     Defendant suggests that the district court cannot reject an expert's explanation of specialized knowledge, particularly where such evidence is uncontroverted.

Defendant further asserts that the district court did precisely that by rejecting Doctors Westfried and Harrington's conclusions that he was incompetent to stand trial. As such, Defendant reasons, the district court abused its discretion by finding him competent to stand trial. We disagree.

{20} "Determining credibility and weighing evidence are tasks entrusted to [a] trial court sitting as fact-finder." *State v. Gonzales*, 1997-NMSC-050, ¶ 18, 124 N.M. 171, 947 P.2d 128. In weighing the evidence, the fact finder may reject even uncontradicted expert opinions in whole or in part. *See State v. Mireles*, 2004-NMCA-100, ¶ 35, 136 N.M. 337, 98 P.3d 727 (acknowledging that the fact-finder could freely reject expert testimony in reaching determination that the defendant was neither insane nor mentally ill); *see also State v. Alberico*, 1993-NMSC-047, ¶ 36, 116 N.M. 156, 861 P.2d 192 (acknowledging that even an uncontroverted expert opinion is not conclusive of a fact in issue). Defendant cites to *State v. Gonzales*, 1999-NMCA-027, ¶ 16, 126 N.M. 742, 975 P.2d 355, to support his assertion that a trial court must accept as true any uncontroverted expert evidence, so long as it is not impugned by inadequate facts or bias. However, *Gonzales* does not stand for that proposition. *Gonzales* merely acknowledges that appellate courts presume a trial court has accepted uncontroverted testimony unless it indicates in the record its reasons for refusing to doing so. *Id.*

{21} In this case, the district court made numerous findings of fact and based its conclusion that Defendant is competent on those findings. The district court heard evidence that Defendant was able to understand the court proceedings in which he was involved, understand the charges against him, and assist his attorney in his own defense. In fact, two of the three experts testified that Defendant could be brought to competency through added effort from the trial court and defense counsel. Additionally, the district court heard evidence that Defendant may have been malingering, could minimally read and write, and presented himself in a coherent, focused, and understandable manner in situations outside of his mental evaluations. Based on the evidence mentioned above, the district court's finding of competency was not "clearly against the logic and effect of the facts and circumstances of the case." *Rael*, 2008-NMCA-067, ¶ 6 (internal quotation marks and citation omitted). We therefore conclude that the district court did not abuse its discretion in finding Defendant competent.

**B.    Mental Retardation**

{22} According to Section 31-9-1.6(E), "mental retardation" is "significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior." This language sets forth two prongs to a finding of mental retardation: "(1) significantly subaverage general intellectual functioning and (2)

deficits in adaptive behavior." *State v. Trujillo*, 2009-NMSC-012, ¶ 10, 146 N.M. 14, 206 P.3d 125. A reliably administered IQ test resulting in an IQ score of seventy or below "creates a statutory presumption that both prongs are satisfied[.]" *State v. Gutierrez*, 2015-NMCA-082, ¶ 44, 355 P.3d 93, *cert. denied* 2015-NMCERT-__ (No. 35,325, Aug. 4, 2015); Section 31-9-1.6(E). If these facts are presented, the burden then shifts to the State to prove, by a preponderance of the evidence, that a person does not have mental retardation. *Gutierrez*, 2015-NMCA-082, ¶ 44; Section 31-9-1.6(B) (requiring that mental retardation be proven by a preponderance of the evidence). Rulings on mental retardation under Section 31-9-1.6 are subject to de novo review. *Gutierrez*, 2015-NMCA-082, ¶ 43.

{23} The district court found that, although Defendant obtained an IQ score of sixty-nine, the score was not absolute and could be within a range of plus or minus five points. Expert testimony supports this finding. For example, Doctor Burness testified that, although Defendant's testing with Doctor Westfried resulted in a sixty-nine IQ score, on any other day, Defendant could have scored between a sixty-six and seventy-four. She also testified that, although an IQ score of sixty-nine was in the extremely low range, in her experience, individuals with similar scores can still be competent to go to trial. However, Doctor Burness also pointed out that, although it exists, a test used to measure competency to stand trial in patients who are diagnosed with mental

13

retardation was never administered to Defendant.

{24} Defendant's statement that both doctors who evaluated Defendant found him incompetent to stand trial due to his mental retardation misrepresents the findings of the evaluating doctors. Doctor Westfried did not make any finding that Defendant was mentally retarded. In fact, although acknowledging that Defendant's IQ was sixty-nine, Doctor Westfried noted that Defendant's profile was not typical of someone with mental retardation, and that his subtest scores did not reflect mental retardation. His ultimate conclusion was that Defendant was incompetent to stand trial but could be competent to enter a plea agreement.

{25} Doctor Harrington relied on Doctor Westfried's determination that Defendant's IQ score was sixty-nine, and concluded that Defendant met the criterial for mental retardation. The skills that Doctor Harrington considered in his analysis of Defendant's adaptive behavior included the ability to live independently, the ability to function in the community, the ability to partake in leisure skills, the ability to care for one's health and safety, the ability to communicate effectively, the ability to exercise social skills, and the ability to exercise functional academic skills. Doctor Harrington concluded that Defendant had adaptive behavior deficits based on Defendant's deficient communication, social, and academic skills.

{26} In concluding that Defendant's communication skills were deficient, Doctor

14

Harrington stated that Defendant's speech and language could be difficult to understand. Doctor Harrington's report includes excerpts of his conversation with Defendant. Some of Defendant's statements in Harrington's report are juvenile or abstract, such as his statement that discipline is learned "by age, not by the size of your shoe." Others, however, are logical and make sense: "People have a hard time understanding [me] . . . it doesn't come out as clear as they want, like I don't make sense." Doctor Harrington admitted that during his interview with the police, Defendant was "understandable," did not use any of the "clumsy language" or "odd phrasing" that he used during his mental evaluation interviews, and demonstrated the ability to speak coherently and articulately.

{27}    Doctor Harrington also concluded that Defendant's social and interpersonal skills were deficient because he had "an extremely limited set of social experiences"—he was often teased at school and had very limited experience dating. Although acknowledging that Defendant worked two jobs in order to purchase a truck, Doctor Harrington concluded that the simple duties that Defendant performed there—moving and washing cars—were not indicative of his ability to keep up with trial proceedings. Doctor Harrington did not comment on the various other jobs that Defendant held, including those at restaurants, as a janitor, and at a vehicle accessory store. Doctor Harrington gave no opinion on whether Defendant's employment history

15

indicated adequate or deficient social or interpersonal skills.

{28} Doctor Harrington also concluded that Defendant's academic skills were "very poor." In drawing this conclusion, Doctor Harrington relied entirely on Doctor Westfried's conclusion that Defendant is "essentially illiterate" and the Wide Range Achievement Test (WRAT) that Doctor Westfried administered. The WRAT indicated that Defendant's reading comprehension and writing skills were at approximately a third-grade level. As mentioned above, Defendant is able to read and write simple sentences, and he can complete simple subtraction, addition, and multiplication. Defendant also graduated from high school with a 3.3 grade point average, although he was in special education classes. He graduated fifty-ninth in a class of 359 students.

{29} The district court ultimately concluded that Defendant was not mentally retarded based on evidence that there were no deficits in Defendant's adaptive behavior. Defendant now challenges that finding. We conclude, based on the evidence listed above, that the district court could reasonably reject Doctor Harrington's testimony regarding Defendant's alleged adaptive behavior deficits. Similarly, there was ample evidence presented to undermine Doctor Harrington's conclusion that Defendant's communication and academic skills were deficient. As such, we conclude that the district court did not err in concluding that Defendant was not mentally retarded.

**C.      Defendant's Motion to Reconsider Sentence or Withdraw Plea**

{30}      Defendant's motion to reconsider sentence requested that the district court reconsider his twelve-year sentence and instead give him five years, based on the off-record June 28, 2012 discussion between the State, defense counsel, and judge. In the alternative, Defendant's motion requested that the district court allow him to withdraw his plea because it was made "based on counsel's misrepresentations" regarding the length of his sentence. Defense counsel emphasized during a hearing on Defendant's motion, however, that the purpose of the motion was not to withdraw the plea due to manifest injustice, as is required for a motion to withdraw, Rule 5-304 NMRA comm. cmt. (a) and (b), but rather to ask the court to reconsider Defendant's sentence in light of the June 28, 2012 discussion.

{31}      On appeal, Defendant argues that the district court erred in denying his motion for reconsideration, and asks this Court to remand for the district court to impose a five-year sentence. In the alternative, Defendant requests that we allow him to withdraw his plea due to ineffective assistance of counsel. We address each argument in turn.

**1.      Motion to Reconsider**

{32}      We review the district court's denial of Defendant's motion for abuse of discretion. *See State v. Sosa*, 1996-NMSC-057, ¶ 12, 122 N.M. 446, 926 P.2d 299

17

(concluding that the denial of motion for reconsideration was not an abuse of discretion). A court abuses its discretion when its ruling is "clearly against the logic and effect of the facts and circumstances of the case[,]" or it is "clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

{33}     Defendant's twelve-year sentence is in accord with the five to eighteen years required by written language of the plea agreement. Defendant had the written plea agreement read to him. During the change of plea hearing, the district court explained to Defendant that he was being exposed to a minimum of five years and a maximum of eighteen years in the department of corrections. Defendant stated that he understood. The district court asked Defendant whether all agreements were contained in the plea agreement, to which he answered yes. The district court also asked if anyone made any promises to him other than those in the plea agreement, to which he answered no. The district court found that Defendant's plea was not the result of threats or promises apart from those agreements contained in the plea agreement itself.

{34}     Plea agreements must be in writing to ensure that "prosecutorial promises are kept, that the plea agreement accurately reflects the bargain struck between the prosecutor and the defendant, that a defendant is adequately informed of the consequences of the plea, and that the plea agreement is not secretive." *State v.*

18

*Jonathan B.*, 1998-NMSC-003, ¶ 11, 124 N.M. 620, 954 P.2d 52. While the parties agree that the court expressed an inclination toward giving Defendant a five-year sentence, there is no indication that such inclination was intended to be a promise. Further, the written plea agreement neither mentioned the off-record conversation, nor indicated that a promise was made to give Defendant a five-year sentence.

{35}    As written, there is no ambiguity as to Defendant's potential sentence under the plea agreement. The sentence that Defendant received clearly falls within the range provided by the written plea agreement. Defendant points to nothing in the record that indicates the district court abused its discretion in rejecting Defendant's motion to reconsider sentence. We therefore conclude that the district court's refusal to reconsider Defendant's sentence neither defies logic, nor is it clearly untenable. We therefore affirm its order denying Defendant's motion to reconsider sentence.

**2.       Ineffective Assistance of Counsel and Withdrawal of Plea**

{36}    Denial of a motion to withdraw a plea is reviewed for an abuse of discretion. *State v. Hunter*, 2006-NMSC-043, ¶ 11, 140 N.M. 406, 143 P.3d 168. An abuse of discretion occurs where a court commits manifest error, and it is a manifest error to deny a motion to withdraw a guilty plea where "the undisputed facts establish that the plea was not knowingly and voluntarily given." *Id.* (quoting *State v. Garcia*, 1996-NMSC-013, ¶ 7, 121 N.M. 544, 915 P.2d 300). "The voluntariness of a plea entered

19

on the advice of counsel depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hunter*, 2006-NMSC-043, ¶ 12 (internal quotation marks and citations omitted). As such, our determination of whether the district court abused its discretion is dependent on a determination of whether Defendant's plea was voluntary. Whether Defendant's plea was voluntary then depends on whether defense counsel was ineffective.

{37}    Defendant bases his claim of ineffective assistance on defense counsel's failure to accurately advise him of the sentence that he ultimately received. He believed, apparently based on the representations of defense counsel, that if he pleaded guilty, the district court would sentence him to five years, rather than the twelve to which he was ultimately sentenced. We review claims of ineffective assistance of counsel de novo, and "defer to the findings of fact of the trial court if substantial evidence supports the court's findings." *State v. Crocco*, 2014-NMSC-016, ¶ 11, 327 P.3d 1068. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Landavazo v. Sanchez*, 1990-NMSC-114, ¶ 7, 111 N.M. 137, 802 P.2d 1283.

{38}    On direct appeal, "only when a defendant presents a prima-facie case of ineffective assistance of counsel will this Court remand to the trial court for evidentiary proceedings." *State v. Bernal*, 2006-NMSC-050, ¶ 33, 140 N.M. 644, 146

P.3d 289. We apply the standard delineated in *Strickland v. Washington*, 466 U.S. 668 (1984) to ineffective assistance claims arising out of a plea agreement. *See State v. Paredez*, 2004-NMSC-036, ¶ 13, 136 N.M. 533, 101 P.3d 799. In order to establish ineffective assistance of counsel, "a defendant must show: (1) 'counsel's performance was deficient,' and (2) 'the deficient performance prejudiced the defense.' " *Paredez*, 2004-NMSC-036, ¶ 13 (quoting *Strickland*, 466 U.S. at 687). We generally presume that counsel's conduct "falls within the wide range of reasonable professional assistance[,]" and counsel's performance is deficient only if it "falls below an objective standard of reasonableness." *Hunter*, 2006-NMSC-043, ¶ 13 (internal quotation marks and citations omitted).

{39} According to the arguments made during the motion hearing, defense counsel informed Defendant that he would likely receive a sentence of five years. One of the two attorneys representing Defendant conceded that, while the judge did not promise a five-year sentence, the judge did leave defense counsel with the impression that he was inclined to give a five-year sentence. The other defense attorney also stated that his notes of the meeting indicated the judge was inclined to give a five-year sentence. While they advised Defendant he would receive a five year sentence, defense counsel also informed him that such sentence was not guaranteed. The State explained that it believed the judge had expressed an inclination to give a lower sentence, but pointed

out that no promise was made, as evidenced by the written plea agreement.

{40} It was not objectively unreasonable for counsel to inform Defendant of the judge's stated inclination as it pertains to Defendant's sentencing and could influence his decision. Defense counsel informed Defendant of his potential term of incarceration if he were to go to trial, as well as the potential sentence were he to accept the plea agreement. Defense counsel also apparently informed Defendant of the conversation that took place between the parties and the judge. As such, the record does not support a conclusion that defense counsel's performance was deficient or fell below an objective standard of reasonableness. To the extent that there is conflicting evidence regarding what defense counsel told Defendant, the district court could properly resolve those factual conflicts, and we will not disturb the court's conclusions, as they are supported by substantial evidence. *See State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964 (acknowledging that the district court is in the best position to resolve questions of fact and deferring to the district court's findings of fact if substantial evidence exists to support of those findings).

{41} Defendant has also failed to make a prima facie showing of prejudice. Defendant points to no evidence in the record to suggest that, had defense counsel not informed him that the judge was inclined to give him a five-year sentence, he would have gone to trial instead of pleading guilty. In determining whether a defendant has

22

suffered prejudice, we look at whether there is a reasonable probability that, "but for counsel's errors, he would not have pleaded guilty and instead gone to trial." *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 18, 130 N.M. 179, 21 P.3d 1032 (internal quotation marks and citation omitted). Our courts often demand "more than the self-serving statements of defendants to prove prejudice." *Garcia v. State*, 2010-NMSC-023, ¶ 42, 148 N.M. 414, 237 P.3d 716 (internal quotation marks and citation omitted). We therefore look to the strength of the State's evidence and Defendant's pre-conviction statements or actions to determine whether a reasonable probability exists that Defendant would not have pleaded guilty. *Patterson*, 2001-NMSC-013, ¶ 28.

**{42}** The State appears to have had two confessions from Defendant as well as a child witness who was willing to testify in its case against Defendant. Nothing in the record indicates that Defendant was adamant about his innocence or about going to trial. In fact, while requesting leniency from the district court, defense counsel emphasized that Defendant came forward to report what had happened and repeatedly admitted to the factual basis underlying the claims. We therefore conclude that Defendant has failed to make a prima facie showing of prejudice.

**{43}** The record on appeal often does not contain enough information to allow for a determination of ineffective assistance: "the record before the trial court may not

23

adequately document the sort of evidence essential to a determination of trial counsel's effectiveness because conviction proceedings focus on the defendant's misconduct rather than that of his attorney." *Duncan v. Kerby*, 1993-NMSC-011, ¶ 4, 115 N.M. 344, 851 P.2d 466. This Court therefore has a preference that ineffective assistance claims be brought and resolved through habeas corpus proceedings: "habeas corpus is specifically designed to address such postconviction constitutional claims and is the procedure of choice in th[ose] situation[s]." *Id.* Although Defendant has failed to establish a prima facie case of ineffective assistance of counsel on direct appeal, Defendant may still pursue this claim through a habeas corpus proceeding, should he believe a factual basis exists for such a claim.

## III.   CONCLUSION

{44}   We conclude that the district court did not abuse its discretion in finding Defendant competent where there was evidence to support its decision. The sentence the district court imposed was in accordance with the sentence range provided by the unambiguous written terms of Defendant's plea agreement. As such, the district court did not abuse its discretion in refusing to reconsider Defendant's sentence. Defendant has failed to make a prima facie case of ineffective assistance of counsel on direct appeal. For all these reasons, we affirm.

{45}   **IT IS SO ORDERED.**

24

_____

**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Chief Judge**

_____

**JAMES J. WECHSLER, Judge**