2005-NMCA-089

117 P.3d 254

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**David HUNTER, Defendant–Appellant.**

**No. 24,166.**

Court of Appeals of New Mexico.

April 19, 2005.

Certiorari Granted, No. 29,258, July 11, 2005.

Patricia A. Madrid, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Sue A. Herrmann, Appellate Defender, Santa Fe, NM, for Appellant.

*OPINION*

BUSTAMANTE, Chief Judge.

{1} Defendant was charged with custodial interference in violation of NMSA 1978, § 30-4-4 (1989). The charges were based on a foreign custody order from Missouri. After pleading no contest, Defendant sought to withdraw his plea. The district court denied the motion to withdraw the plea, and Defendant appeals. We reverse the decision of the district court denying Defendant's motion to withdraw his plea, and remand for proceedings consistent with this opinion. We also hold that the district court violated double jeopardy protections by sentencing Defendant to consecutive terms.

**FACTS AND PROCEDURAL HISTORY**

{2} Defendant and his ex-wife, Patricia Smith (mother), were granted a divorce in Poplar Bluff, Butler County, Missouri in April 1992. The original divorce decree granted Defendant physical custody of their three minor children, and provided mother with supervised visitation in Defendant's presence. Defendant testified that he moved to New Mexico with the children in 1994. Although the record is not clear, it appears that mother moved to Texas in 1991, prior to the divorce. The parties entered into a stipulated agreement in 1995 that was signed before a notary in Missouri, but was never filed with any court. The stipulated agreement purports to change custody to the mother, and grants permission for the children to leave the State of Missouri.

{3} Defendant was served a summons from the Butler County court in May 1997 notifying him that mother was asking the court for a change in custody. Defendant testified that he contacted a civil attorney who told him that the State of Missouri did not have jurisdiction to enter a modification because neither the parents nor the children were living in Missouri. Defendant testified that he wrote to the Missouri court contesting jurisdiction and the court responded by saying he should get a lawyer. The Missouri court then entered an order modifying the original decree on June 13, 1997, finding that Defendant defaulted by having not appeared, and granting primary custody of the minor children to mother. Two days later, mother went to the Alamogordo police in an attempt to take custody of the children. The police refused to intervene, stating that this was a civil matter that required proper entry of a foreign judgment and resolution in the civil courts. Mother then returned to Texas.

{4} Defendant heard nothing else of the matter until April 2001 when he was contacted by Officer Yost of the Alamogordo police department. In a sworn affidavit, Officer Yost presented the following testimony that led to the arrest of Defendant on charges of custodial interference:

# 2. Affiant learned on 03-31-01 from Ms. Patricia Smith that in 1997 she had petitioned for and was granted a modification to a divorce decree that was originally issued in Poplar Bluff, Butler [C]ounty, Missouri on 04-14-1992.

# 3. Affiant learned from Ms. Smith the original decree granted the ... defendant physical custody of their three minor children ...; the court found sufficient evidence on June 13, 1997 to reverse it's [sic] original decision there by [sic] giving Ms. Patricia Diane Smith physical custody of their children.

# 4. Affiant learned from[ ] Ms. Smith after having been awarded custody of her three minor children she came to the city of Alamogordo, Otero [C]ounty, [S]tate of New Mexico attempting to get the physical custody of her children awarded to her by

the Butler county court, only to be told this was a civil matter and she would need to file a complaint with the court that issued the modification.

. . . .

# 6. Affiant learned from[ ] Ms. Smith since 1997 the only contact she'd had with her children has been via telephone, that at no time has she been allowed by the . . . defendant to have the physical custody awarded to her by the [B]utler county court, Ms. Smith acknowledged she would be allowed to visit with the children but only in the . . . defendant[']s home, that she would not be allowed to have any transportation other than that which the . . . defendant would be willing to provide.

# 7. Affiant . . . was able to speak with the . . . defendant on or about 04–02–01 over the telephone in reference to custodial interference, [and] was advised by . . . defendant this was a civil matter and he refused to make any other comments, when [affiant] attempted to explain because there had been a modification to the original order and it appeared he was in noncompliance with the more current court order, he became belligerent speaking in a loud tone demanding to know why she was not under arrest for non-payment of child support, this conversation ended with the . . . defendant hanging up the telephone. This officer attempted to have two more similar conversations with the . . . defendant which also ended similarly.

{5} Based on this affidavit, Defendant was arrested on August 18, 2001, and charged with one count of custodial interference contrary to Section 30–4–4. A grand jury then indicted Defendant on three counts of custodial interference, one for each child. Defendant testified that he believed the 1997 modification was invalid because the Missouri court did not have jurisdiction to enter the modification, and because this was a civil matter. Defendant believed the arrest was illegal and that he was in compliance with the 1992 custody order, which was the only existing valid order. Defendant was originally released on bond under the condition that he not leave Otero County. Mother contacted Officer Yost after Defendant's release and alleged that Defendant traveled to Texas and removed two of the children from mother, thereby violating the terms of his release. Defendant was again arrested and then held in jail without bond, and charged with escape from a peace officer in violation of NMSA 1978, § 30–22–10 (1963).

{6} Defendant was represented by three different trial attorneys in this matter. Defendant entered a plea of not guilty and waived arraignment on September 7, 2001. Defendant's first attorney filed a motion to dismiss as a matter of law on November 14, 2001, although she later testified that she felt there was no merit to the motion, and filed it only at Defendant's insistence. On December 17, 2001, prior to a hearing on the motion, Defendant entered a no contest plea to three counts of custodial interference and escape from a peace officer. At the plea hearing, the district court ordered a forensic evaluation of Defendant. The forensic evaluation was never done. Within three weeks of entering a no contest plea, Defendant indicated to his attorney that he wanted to withdraw the plea. A motion to withdraw as defense counsel and motion for consideration of Defendant's request to withdraw his change of plea were jointly filed on January 9, 2002.

{7} Defendant's second attorney entered her appearance on January 25, 2002, and another motion to withdraw plea of no contest was filed on March 26, 2002. Defendant asserted several grounds for withdrawal of the plea. First, Defendant alleged the plea was not voluntary because at the time he entered the plea, he had just found out that his daughter had been raped. Second, Defendant alleged that a manifest injustice would result if he was not allowed to withdraw his plea because Officer Yost wrongly enforced the custody order without jurisdiction. Finally, Defendant asserted that his plea was not knowing, voluntary, and intelligent because he did not have a good relationship with his attorney who he felt was not assisting him in preparing any defenses for trial.

{8} On the day of the hearing on the motion, Defendant's second attorney requested an order allowing her to withdraw as

counsel. Defendant initially opposed the motion, but later agreed to the withdrawal if new, competent counsel was appointed. Defendant's third attorney entered his appearance on June 27, 2002. Defendant filed pro se another motion to withdraw his plea of no contest and a motion to dismiss as a matter of law for lack of jurisdiction on February 5, 2003. The district court denied both motions without a hearing. Defendant filed a supplemental motion to withdraw his plea for lack of jurisdiction on March 21, 2003. The district court issued an order again denying the supplemental motion to withdraw, finding that "defendant's [m]otion does not raise any issues not previously litigated at the Hearing on the Defendant's Motion to Withdraw Plea on September 3, 2002 and September 9, 2002." The court sentenced Defendant on May 28, 2003, to eighteen months on each count of custodial interference, and eighteen months for escape from a peace officer, each to run consecutively for a total of six years, suspending all but thirty months; including one year of parole, and forty-two months probation.

## DISCUSSION

{9} Defendant raises five issues on appeal, which we consolidate into three. Defendant argues that the district court erred (1) in not allowing him to withdraw his no contest plea, (2) by refusing to address the issue of whether the Missouri court had jurisdiction to modify the 1992 divorce decree by the 1997 order, and (3) in convicting and sentencing Defendant on three separate counts of custodial interference in violation of double jeopardy protections. We take this opportunity to address the appropriate standard for the grant or denial of a pre-sentence motion to withdraw a plea.

{10} We begin by discussing the district court's refusal to address the issue relating to the Missouri court's jurisdiction to modify the decree, followed by a discussion of the appropriate standard of review for pre-sentence plea withdrawals, and then address the issue of double jeopardy.

### Jurisdiction

{11} Defendant contends that the issue of whether or not the district court has jurisdiction is a legal question to be decided by the court, and is not a jury issue that can be waived by entering a plea of no contest. Defendant argues that the district court erred in refusing to address the Missouri jurisdictional issue after the plea was entered. Therefore, Defendant argues that the district court erroneously believed that the jurisdiction of the Missouri courts to modify the decree was an element of the State's proof at trial and thus was waived by the plea. We first address the jurisdiction of the New Mexico district court over the criminal charges against Defendant. Next, we set out the parties' positions in regard to the issue of the jurisdiction of the Missouri court to enter the 1997 custody modification, which forms the basis for Defendant's conviction for custodial interference. We do not resolve this issue; rather, we explain it because of its significance in relation to the issue of whether the district court erred in not allowing Defendant to withdraw his plea.

### New Mexico Jurisdiction

{12} "[T]he district court acquires jurisdiction of a criminal case upon the filing of the information." *Mascarenas v. State*, 80 N.M. 537, 538, 458 P.2d 789, 790 (1969). Legal and factual defenses to charges normally will not implicate the district court's basic power to hear cases brought before it. We see nothing extraordinary here and therefore hold that the district court had subject matter jurisdiction over the criminal charges brought against Defendant.

### Missouri Jurisdictional Issue

{13} Whether or not a state court has subject matter jurisdiction to modify a custody order is governed by the Uniform Child–Custody Jurisdiction and Enforcement Act, NMSA 1978, §§ 40–10A–101 to –403 (2001). However, Section 40–10A–403 provides that a motion made in a custody proceeding which was commenced before the effective date of the UCCJEA "is governed by the law in effect at the time the motion ... was made." *Id.* We therefore look to the earlier version of the Act, the Child Custody Jurisdiction Act, NMSA 1978, §§ 40–10–1 to –24 (1981, as amended through 1989) (repealed 2001)

(CCJA). Similar provisions were in effect in Missouri at the time the modification was entered. Mo. Ann. Stat. § 452.450 (1978). The relevant provision of the custodial interference statute and the CCJA is as follows:

B. Custodial interference consists of any person, having a right to custody of a child, maliciously taking, detaining, concealing or enticing away or failing to return that child without good cause and with the intent to deprive permanently or for a protracted time another person also having a right to custody of that child of his right to custody.

Section 30–4–4(B).

{14} The "right to custody" means the "right to physical custody or visitation of a child arising from . . . a parent-child relationship between the child and a natural or adoptive parent absent a custody determination; or [ ] a custody determination." Section 30–4–4(A)(5). A "custody determination" is defined as a "judgment or order of a court of competent *jurisdiction* providing for the custody of a child, including visitation rights." Section 30–4–4(A)(2) (emphasis added).

{15} The jurisdictional provision of the Uniform CCJA under the Missouri law in 1997 was as follows:

1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This state:

(a) Is the home state of the child at the time of commencement of the proceeding; or

(b) Had been the child's home state within six months before commencement of the proceeding and the child is absent from this state for any reason, and a parent or person acting as parent continues to live in this state; or

(2) It is in the best interest of the child that a court of this state assume jurisdiction because:

(a) The child and his parents, or the child and at least one litigant, have a significant connection with this state; and

(b) There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(3) The child is physically present in this state and:

(a) The child has been abandoned; or

(b) It is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse, or is otherwise being neglected; or

(4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.

2. Except as provided in subdivisions (3) and (4) of subsection 1 of this section, physical presence of the child, or of the child and one of the litigants, in this state is not sufficient alone to confer jurisdiction on a court of this state to make a child custody determination.

3. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine custody.

Mo. Ann. Stat. § 452.450.

{16} Defendant argues that the Missouri court did not have jurisdiction under the CCJA to modify the original custody order granting him physical custody of the children. According to Defendant, the Missouri court was therefore not a court of competent jurisdiction as defined in the custodial interference statute. Thus, Defendant asserts, if the Missouri court did not have jurisdiction, then the modification is invalid. "A judgment from a court lacking subject matter jurisdiction is not properly rendered and is not entitled to full faith and credit." *Thoma v. Thoma*, 1997–NMCA–016, ¶ 22, 123 N.M. 137, 934 P.2d 1066. In support of this argument, Defendant asserts that he and the children have lived continuously in New Mexico since 1994, and neither he nor his ex-wife

lived in Missouri at the time the order was entered. In other words, Defendant contends that none of the criteria for jurisdiction in Missouri was present at the time the modification was entered. Furthermore, the Missouri court did not indicate in the 1997 modification the grounds upon which it was asserting jurisdiction.

{17} The State argues in response that even if the Missouri modification in 1997 is invalid, there are other grounds upon which Defendant can be found guilty of custodial interference. The State contends that Defendant's interference with mother's visitation rights under either the 1992 Missouri order or the 1995 stipulated agreement are viable theories of custodial interference upon which Defendant could be charged. We find this argument without merit. The State inconsistently argues that the 1992 order was never admitted into evidence and is not part of the record proper, and therefore should not be considered, and yet asserts that the 1992 order could be a basis for custodial interference if the 1997 order is invalid. Furthermore, it is clear from the affidavit of Officer Yost and the grand jury indictment that Defendant's charges stemmed from a violation of the 1997 Missouri court modification.

{18} Defendant also contends on appeal that the district court should have held a *Foulenfont*-type hearing to determine the issue of whether the 1997 Missouri modification was valid. In *State v. Foulenfont*, 119 N.M. 788, 790, 895 P.2d 1329, 1331 (Ct.App. 1995), this Court held that a district court has authority under pretrial rules to consider purely legal issues before trial. Defendant's initial attorney did not request such a hearing because she felt Defendant had no valid defenses, and that he needed to contact a civil attorney to challenge the Missouri order. As a practical matter, a *Foulenfont* hearing would be appropriate—and perhaps required—in a case like this. A district court should determine, as a matter of law, whether the order upon which the charge is based is valid before proceeding with the criminal charges in this case. There is no need to wait for a civil determination of the validity of the order, in particular, if the civil process is likely to be delayed.

### Summary as to Jurisdiction

{19} We hold that the district court did not err in refusing to address Defendant's argument regarding the jurisdiction of the Missouri court after he entered his plea. Defendant's challenge to the jurisdiction of the Missouri court is a defense to the charges of custodial interference. Defendant waived the defense when he entered a no contest plea. *See State v. Hodge*, 118 N.M. 410, 414, 882 P.2d 1, 5 (1994). However, as we discuss later in this opinion, the district court has discretion to consider the jurisdictional issue as a factor in deciding whether to allow Defendant to withdraw his plea.

### Withdrawal of the Plea

{20} We now turn to Defendant's argument that the district court erred in not allowing him to withdraw his plea. The parties agree the standard of review to be abuse of discretion. A district court exercises its discretion when deciding whether to permit a pre-sentence plea withdrawal, and we review the court's ruling "to determine whether, under the facts offered in support of the motion, the trial court abused its discretion." *State v. Lozano*, 1996–NMCA–075, ¶ 9, 122 N.M. 120, 921 P.2d 316; *see* Rule 5–304 NMRA (citing in Committee commentary *State v. Brown*, 33 N.M. 98, 263 P. 502 (1927)). "A court abuses its discretion when it is shown to have acted unfairly, arbitrarily, or committed manifest error." *State v. Garcia*, 121 N.M. 544, 546, 915 P.2d 300, 302 (1996) (internal quotation marks and citation omitted). "Even when we review for an abuse of discretion, however, we review the application of the law to the facts de novo." *Becenti v. Becenti*, 2004–NMCA–091, ¶ 6, 136 N.M. 124, 94 P.3d 867 (internal quotation marks and citation omitted); *accord New Mexico Right to Choose/NARAL v. Johnson*, 1999–NMSC–028, ¶ 7, 127 N.M. 654, 986 P.2d 450 (same).

{21} Rule 5–304, which covers pleas, does not expressly address withdrawal of pleas. However, the committee commentary to Rule 5–304, citing the recommendations of

the American Bar Association Standards Relating to Pleas of Guilty, Section 2.1 (Approved Draft 1968), provides guidance. We recognize that the committee commentary, while not binding on this Court, is persuasive authority. *State v. McCrary*, 100 N.M. 671, 673, 675 P.2d 120, 122 (1984); *Rutherford v. Darwin*, 95 N.M. 340, 343, 622 P.2d 245, 248 (Ct.App.1980) (noting that the official commentary to a statute is persuasive authority, even though not binding on the court). The committee commentary states:

> (a) the court should allow the defendant to withdraw his plea of guilty or no contest whenever the defendant, upon a timely motion for withdrawal, proves that withdrawal is necessary to correct a manifest injustice.
>
> > (i) a motion for withdrawal is timely if made with due diligence, considering the nature of the allegations therein and is not necessarily barred because made subsequent to judgment or sentence.
> >
> > (ii) withdrawal is necessary to correct a manifest injustice whenever the defendant proves that:
> >
> > > (1) he was denied the effective assistance of counsel guaranteed to him by constitution, statute, or rule;
> > >
> > > (2) the plea was not entered or ratified by the defendant or a person authorized to so act in his behalf;
> > >
> > > (3) the plea was involuntary, or was entered without knowledge of the charge or that the sentence actually imposed could be imposed;
> >
> > . . . .
> >
> > (iii) the defendant may move for withdrawal of his plea without alleging that he is innocent of the charge to which the plea has been entered.
>
> (b) in the absence of a showing that withdrawal is necessary to correct a manifest injustice, the defendant may not withdraw his plea of guilty or no contest as a matter of right once the plea has been accepted by the court. *Before sentence, the court in its discretion may allow the defendant to withdraw his plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea.*

Rule 5–304 comm. cmt. (internal quotation marks omitted) (emphasis added). The commentary draws a rather sharp distinction in subparagraphs (a) and (b) between pre-sentence and other motions to withdraw. New Mexico courts have not fully recognized the impact of subparagraph (b) of the committee commentary on Rule 5–304.

{22} Our cases generally hold that a plea can only be withdrawn to correct a manifest injustice when the defendant can prove he was denied effective assistance of counsel, he did not ratify the plea, or the plea was involuntary or entered without the requisite knowledge. *See Garcia*, 121 N.M. at 549–50, 915 P.2d at 305–06 (holding defendant should be allowed to withdraw plea where district court did not substantially comply with rules governing the taking of pleas because plea was not knowing and voluntary); *State v. Kincheloe*, 87 N.M. 34, 36, 528 P.2d 893, 895 (Ct.App.1974) (holding district court abused its discretion in denying motion to withdraw guilty plea where court-appointed counsel did not discuss defenses with defendant). This standard for plea withdrawal is consistent with subparagraph (a) of the committee commentary, but it ignores subparagraph (b) of the commentary which allows pre-sentence withdrawal for any fair and just reason. Our case law fails to make a distinction between pre-sentence plea withdrawals and requests for withdrawal after sentencing. Our existing case law does not provide adequate guidance or explanation as to why the appellate courts have chosen this path.

{23} For example, in *State v. McClarron*, 85 N.M. 442, 512 P.2d 1278 (Ct.App.1973), the defendant requested a plea withdrawal prior to sentencing because she was alerted by the police of the existence of a defense she was unaware of at the time of the plea, that if proven, could lead to an acquittal. *Id.* at 443, 512 P.2d at 1279. The majority held that since the plea was voluntary, and defendant was aware of the consequences of her acts, there was no denial of due process in denying a motion to withdraw the plea. *Id.* The majority found no difference between the withdrawal request in the case that was made before sentencing and a plea withdraw-

al request in a companion case that was made after sentencing. *Id.* The dissent disagreed, arguing that the standard for pre-sentence withdrawals is different, and so long as the defendant presents a fair and just reason, the withdrawal should be granted. *Id.* (Sutin, J., dissenting).

{24} The issue resurfaced in *State v. Moore,* 2004–NMCA–035, ¶ 10 n. 3, 135 N.M. 210, 86 P.3d 635. In *Moore,* the defendant moved before sentencing to set aside his plea, challenging the plea procedure. *Id.* ¶ 10. This Court, in a footnote, raised the issue of whether a pre-sentence motion to withdraw a plea should be reviewed under what might be interpreted as a different standard or a variation of the abuse of discretion standard. *Id.* ¶ 10 n. 3. We referred to the committee commentary of Rule 5–304 allowing pre-sentence withdrawals for any fair and just reason, and further noted that the federal courts follow this rule. *Id.* This Court in *Moore* left the question to be answered another day. *Id.*

{25} As noted in *Moore,* federal courts follow the American Bar Association Standards for pre-sentence plea withdrawals. The general rule in federal courts is that a defendant who enters a guilty plea has no automatic "right to withdraw it." *United States v. Hickok,* 907 F.2d 983, 985 (10th Cir.1990) (internal quotation marks and citation omitted). The defendant bears the burden of demonstrating a fair and just reason for withdrawal of a guilty plea before sentencing, but so long as the defendant meets this burden, the plea may be withdrawn. *Id.* While a motion for withdrawal before sentencing should be viewed with favor and defendant given a great deal of latitude, the decision is yet within the sound discretion of the district court. *See United States v. Rhodes,* 913 F.2d 839, 845 (10th Cir.1990) (noting that the district court is permitted to allow "withdrawal of a plea prior to sentencing upon a showing by the defendant of any fair and just reason" a motion for withdrawal "should be viewed with favor" and "[t]he defendant should be given a great deal of latitude" (internal quotation marks and citations omitted)). Unless the defendant shows that the district court acted unfairly or un-

justly, there is no abuse of discretion. *Hickok,* 907 F.2d at 986; *United States v. Harrison,* 303 F.Supp.2d 1242, 1243–44 (D.N.M. 2004) (observing that defendant should be allowed to withdraw plea for any fair and just reason).

{26} Federal Rule of Criminal Procedure 11(d)(2)(B) states that, "A defendant may withdraw a plea of guilty or nolo contendere[ ] after the court accepts the plea, but before it imposes sentence if[ ] the defendant can show a fair and just reason for requesting the withdrawal." In determining whether a defendant has met his burden, federal courts look to the following factors: (1) whether the defendant asserted his innocence, (2) whether the government will be prejudiced if the motion is granted, (3) whether the defendant delayed in filing the motion, (4) the inconvenience to the court if the motion is granted, (5) the quality of the defendant's assistance of counsel, (6) whether the plea was knowing and voluntary, and (7) whether the granting of the motion would cause a waste of judicial resources. *Hickok,* 907 F.2d at 985 n. 2; *Harrison,* 303 F.Supp.2d at 1244.

{27} Many state courts also follow the American Bar Association Standard allowing for pre-sentence plea withdrawal if defendant can show a fair and just reason. For example, in Colorado, a defendant is entitled to withdraw a plea prior to sentencing if the defendant can show a fair and just reason for the withdrawal. *People v. Luna,* 852 P.2d 1326, 1328 (Colo.Ct.App.1993) (finding that lack of knowledge of deportation consequences was fair and just reason to allow plea withdrawal). In Wyoming, withdrawal of pleas is governed by the rules of criminal procedure, which state that before a sentence is imposed, "the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only to correct manifest injustice." *Haddock v. State,* 909 P.2d 974, 975 (Wyo.1996) (internal quotation marks and citation omitted); *see also State v. Carlson,* 260 Neb. 815, 619 N.W.2d 832, 837 (2000) (holding "[a]fter the entry of a plea of guilty or no contest, but before sentencing, a court, in its discretion,

may allow a defendant to withdraw his or her plea for any fair and just reason, provided that the prosecution has not been or would not be substantially prejudiced by its reliance on the plea entered"); *Commonwealth v. Kioske*, 337 Pa.Super. 593, 487 A.2d 420, 422 (1985) (observing courts, in their discretion, may "permit or direct a plea of guilty to be withdrawn at any time prior to sentencing [and r]equests to withdraw guilty pleas prior to sentencing are to be liberally allowed for any fair and just reason unless the Commonwealth will suffer substantial prejudice" (internal quotation marks and citation omitted)). Finally, we note that 5 LaFave et al. *Criminal Procedure* § 21.5(a) at 195–97 (2d ed.1999), supports the procedure followed by the federal courts and many states.

{28} After reviewing Rule 5–304, the committee commentary citing the American Bar Association Standards, the federal rules and case law, the law and procedure from other states, and secondary sources, we hold that in reviewing a pre-sentence plea withdrawal request, the district court in its discretion may allow the defendant to withdraw a plea of guilty or no contest for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea. The defendant has the burden of proving a fair and just reason exists for the withdrawal of the plea. In evaluating whether a fair and just reason exists, we adopt the factors used by the federal courts. *See Hickok*, 907 F.2d at 985; *Harrison*, 303 F.Supp.2d at 1244. The standard for post-sentencing plea withdrawals which is manifest injustice, remains unchanged.

{29} With the standard for reviewing pre-sentence plea withdrawals clarified, we now turn to Defendant's argument that the district court erred in denying his motion to withdraw his no contest plea. Defendant raises several arguments in support of his motion to withdraw his plea. Defendant is not challenging the plea procedure itself under Rule 5–303(E) NMRA. As discussed in the previous section, Defendant contends that the Missouri court lacked jurisdiction, therefore the custody modification order upon which the custodial interference

charges are based is invalid. Defendant also argues that his plea was entered upon the advice of ineffective counsel. Defendant asserts that his lawyer erroneously advised him that he had no defenses to the charges against him. Defendant also argues that his attorney advised him that if he entered a no contest plea, he would only get probation, and that entering the plea was the quickest way to get out of jail to be with his daughter who had recently been raped.

{30} The district court, in denying Defendant's first motion to withdraw his plea, stated the following:

> IT IF [SIC] THE FINDING OF THE COURT that there is insufficient evidence to require the Court to set aside its prior finding that the plea was knowing, intelligent and voluntary and further that the tape of the plea hearing reflects that the Defendant clearly understood the advice by the Court that "once we finish this process here today, there won't be any changing your mind later as to your plea."

{31} The district court denied Defendant's subsequent motions to withdraw his plea without a hearing. The language of the court's finding indicates that the court believed Defendant had to establish a manifest error to withdraw his plea. As we discussed, pre-sentence plea withdrawals may be granted upon the showing of a fair and just reason. Defendant does not necessarily need to establish that the plea was not knowing, intelligent, and voluntary or that he had ineffective assistance of counsel. Defendant only needs to establish a fair and just reason for the withdrawal, taking into account the seven criteria we have adopted.

{32} We find the following facts in the record to be important in evaluating Defendant's request to withdraw his plea. Defendant entered a "straight-up" plea of no contest, meaning he received nothing from the State in return for his plea. Defendant's attorney testified that she did not discuss the possibility of a conditional plea with Defendant, which would have allowed the jurisdictional issue to be addressed and not waived by the entry of a plea. Defendant's attorney further testified that she did not believe De-

fendant had any valid defenses, and she advised him to contact a civil attorney to challenge the Missouri order. Over the course of the case, Defendant was represented by three different counsel. We also note that the crime of custodial interference requires intent. Section 30-4-4(B). If, as Defendant testified, he contacted a civil attorney and believed at all times he had a valid custody order granting him custody of the children, Defendant may have a complete factual defense to the charges. While we make no determination based on these limited facts about the effectiveness of Defendant's counsel, these facts clearly raise concerns that may establish a fair and just reason for his plea to be withdrawn.

{33} We remand this issue to allow the district court to review Defendant's request for withdrawal of his plea under the standard set forth in this opinion. If the plea is withdrawn, the court may conduct a *Foulenfont*-type hearing to determine whether the Missouri order upon which these charges are based is valid before proceeding further. We believe remand is warranted in this case because the record is insufficient for us to make a determination as to whether Defendant has presented a fair and just reason for withdrawal, and to what extent, if any, the State would be prejudiced.

### Double Jeopardy

{34} We address the issue of double jeopardy because it may arise on remand if Defendant is not allowed to withdraw his plea. Defendant argues that the district court violated double jeopardy requirements by charging and sentencing him consecutively for three counts of custodial interference, one for each child. "Where a defendant is charged with multiple violations of a single statute and raises a double jeopardy challenge, we determine whether the legislature intended to permit multiple charges and punishments under the circumstances of the particular case." *State v. Soto*, 2001–NMCA–098, ¶ 13, 131 N.M. 299, 35 P.3d 304. This type of claim, that a defendant was subjected to multiple punishments for the "same offense" is analyzed under the rubric "unit of prosecution" or is considered a "unit of pros-

ecution case." *State v. Barr*, 1999–NMCA–081, ¶ 11, 127 N.M. 504, 984 P.2d 185. If the units of prosecution are not clearly defined in the statute, we consider whether the conduct is unitary and different offenses are separated by sufficient indicia of distinctness, including: "(1) the temporal proximity of the acts; (2) location of the victim(s) during each act; (3) existence of an intervening event; (4) sequencing of acts; (5) defendant's intent as evidenced by his conduct and utterances; and (6) the number of victims." *Soto*, 2001–NMCA–098, ¶ 13, 131 N.M. 299, 35 P.3d 304 (internal quotation marks and citation omitted). While "multiple victims will likely give rise to multiple offenses[,] this is not always the case, especially if the other factors militate against multiple units of prosecution." *State v. Castaneda*, 2001–NMCA–052, ¶ 13, 130 N.M. 679, 30 P.3d 368 (internal quotation marks and citation omitted). We review this issue de novo. *Soto*, 2001–NMCA–098, ¶ 13, 131 N.M. 299, 35 P.3d 304.

{35} Defendant argues that maintaining custody of his children was a singular, continuous act as defined by this Court in *Castaneda*. The defendant in *Castaneda* was found guilty of driving while intoxicated with three of her children in the car, and found guilty of three counts of child abuse, one for each child. On appeal, this Court held that the three counts of child abuse merged "because the abuse of the three children occurred during a single criminally negligent act and therefore constituted only one violation of the statute." *Id.* ¶ 18. Similarly, in *State v. Cuevas*, 94 N.M. 792, 794, 617 P.2d 1307, 1309 (1980) *overruled on other grounds by State v. Pitts*, 103 N.M. 778, 714 P.2d 582 (1986), the Court held that a teacher who demonstrated a method of drinking tequila to approximately twenty students at a party was held to have committed only one act of contributing to the delinquency of a minor.

{36} We are persuaded that Defendant's acts in this case are like those in *Castaneda* and *Cuevas*. The district court determined that the conduct of Defendant was not unitary and the offenses did not merge because the dates as to one of the charges was different. We disagree. Counts I and II charged Defendant with custodial interference "on or

between June 13, 1997 through August 18, 2001." Count III charged Defendant with custodial interference "on or between June 13, 1997 through January, 2001." There is no evidence in the record indicating that Count III resulted from a different act, or with a different intent than Counts I and II. A date on an indictment or charge is not, in and of itself, sufficient to establish that the offenses are not unitary and should not merge.

{37} The custodial interference statute refers to "child" in the singular, stating the "taking, detaining, concealing or enticing away or failure to return that child ... is guilty of a fourth degree felony." Section 30–4–4(B). The unit of prosecution is not clear from the statute, so we turn to the factors set forth in *Soto* and *Castaneda.* Defendant maintained custody of his children during the period of time in question. This required essentially one act over time, thus the temporal proximity of the acts is that they occurred at the same time. The children were all in Defendant's household, and thus the location of the children during each act was the same. Defendant's intent, as evidenced by his statements, was to raise his children. His conduct and utterances do not indicate that he had a separate intent as to each daughter. In fact, Defendant testified that he believed he legally had custody of "the children" on the dates in question. Finally, we note that the charges stem from one custody order re-garding the children. Although there are three children involved, the alleged violation relates to only one custody order. The district court violated double jeopardy requirements in convicting Defendant on three counts of custodial interference, and sentencing Defendant consecutively on each count. We therefore reverse and remand to the district court for entry of a sentence consistent with this opinion, if Defendant is not allowed to withdraw his plea.

## CONCLUSION

{38} To summarize, we hold that the district court did not err in refusing to address Defendant's jurisdictional issue after he entered a no contest plea. We remand to the district court for further proceedings to determine whether Defendant presented a fair and just reason to withdraw his plea. We also hold that the district court violated double jeopardy requirements in convicting and sentencing Defendant on three separate counts of custodial interference, and remand.

{39} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and JONATHAN B. SUTIN, Judges.