# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2012-NMCA-024**

**Filing Date: February 10, 2012**

**Docket No. 28,167**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**MICHAEL SOUTAR,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Michael E. Vigil, District Judge**

Gary K. King, Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**CASTILLO, Chief Judge.**

{1}    Convicted of racketeering and several state securities violations, Michael Soutar (Defendant) now appeals his convictions. He challenges the court's revocation of his plea deal, the nature of the jury instructions, and the sufficiency and admission of evidence used to convict him. For reasons explained below, we affirm.

## I.      BACKGROUND

1

**{2}** Defendant was tried and convicted of multiple violations of the New Mexico Securities Act of 1986, NMSA 1978, Sections 58-13B-1 to -57 (1986, as amended through 2003) (repealed 2009), and one count of racketeering in violation of NMSA 1978, Section 30-42-4 (2002). These convictions arose out of Defendant's formation of Santa Fe International Development, a Limited Liability Company (the LLC), under which Defendant operated a business called the Santa Fe Market (the Market).

**{3}** Defendant acted as general manager of the Market and advertised it as a facility near the Plaza in Santa Fe where artists could lease space, sell their products, and keep eighty-five percent of their proceeds, relinquishing the remainder to the Market. Defendant attracted several investors who bought interests in the LLC through investment contributions. These investments were significant, in the range of $25,000 and up.

**{4}** The Market failed, and the investors lost all of their money. The victims alleged that they had been defrauded. Defendant was indicted in December 2004 on nine counts of securities violations for unlawfully selling interests in the LLC, one count of racketeering based on the securities violations, and numerous other charges including escape from jail, forgery, and fraud.

**{5}** Defendant entered into plea negotiations with the State. He represented that he had $125,000 at his disposal from a third party and informed the State that he was willing to provide this money to the victims as an initial lump-sum restitution payment if an acceptable plea agreement was reached. Defendant further indicated that, if no plea was reached and Defendant was required to stand trial, this money would have to be put toward the costs of his defense. Defendant also informed the district court of the existence of these funds and his desire to compensate the victims as part of a plea agreement.

**{6}** In October 2006, a plea hearing was held, and the district court accepted and entered a plea and disposition agreement. The agreement included a provision requiring Defendant to make restitution but did not specifically reference a lump-sum payment. Defendant agreed to plead no contest to three counts of fraudulent practices in connection with the sale of securities, one count of escape from jail, and one count of racketeering. Immediately after accepting the agreement, the district court proceeded to orally sentence Defendant. The sentence imposed—twelve years' confinement with all but three years suspended, entitlement to good time, and a five-year probationary period—was consistent with the terms of the agreement.

**{7}** Seventeen days after the plea hearing, the State filed a "motion for reconsideration of sentence or to withdraw [the] plea." The State alerted the court to the fact that Defendant had failed to live up to his commitment to make restitution.

**{8}** At the hearing on that motion, Defendant confirmed that he was either unable or unwilling to make an initial lump-sum payment. The district court informed Defendant that

the only reason it had accepted the plea was because it understood that the terms of the agreement required Defendant to make restitution and that restitution involved a substantial, initial lump-sum payment. Defendant responded that, while the plea agreement did include a restitution provision, it did not include any reference to a lump-sum payment. Defendant further argued that double jeopardy and other legal principles precluded the court from withdrawing the plea or altering the orally imposed sentence. The court disagreed, withdrew the plea, and ordered Defendant to stand trial.

{9}     At the close of trial, Defendant proposed several instructions that the court denied. Defendant was convicted of one count of racketeering and three counts each of fraudulent practices in connection with the sale of securities in violation of Section 58-13B-30; selling unregistered securities in violation of Section 58-13B-20; and selling securities without a license in violation of Section 58-13B-3. He was sentenced to eighteen years' confinement for these offenses and an additional sixteen years' confinement as a habitual offender for a total period of thirty-four years' confinement.

## II.     DISCUSSION

{10}     On appeal, Defendant raises five issues. He asserts that the oral sentence the court imposed under the plea agreement was final and binding and that double jeopardy precluded the court from ordering him to stand trial. Second, he contends that the district court abused its discretion when it ordered the plea agreement withdrawn and claims that "after the court accepted the plea agreement[,] it was bound by its terms to sentence [him] to the negotiated sentence." He maintains that the plea agreement did not require him to make an initial lump-sum payment, yet the district court granted the State's request to withdraw the agreement due to his inability to make that payment. Third, he claims two errors regarding the court's denial of his proposed jury instructions. Fourth, he challenges the sufficiency of the evidence underlying his convictions. Fifth, and finally, he asserts that the court erred in admitting evidence of his prior bad acts. We address these issues in turn.

### A.     Double Jeopardy

{11}     "We generally review double jeopardy claims de novo." *State v. Rodriguez*, 2006-NMSC-018, ¶ 3, 139 N.M. 450, 134 P.3d 737. The Double Jeopardy Clause of the United States Constitution guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V. However, "[i]n order to successfully claim double jeopardy, a former jeopardy must have occurred—there must have been a previous proceeding in which jeopardy attached." *State v. Angel*, 2002-NMSC-025, ¶ 7, 132 N.M. 501, 51 P.3d 1155. Here, Defendant acknowledges that jeopardy did not attach when the court accepted his plea. *See id.* ¶ 13 (holding that jeopardy does not attach upon a court's acceptance of a guilty plea). Rather, he argues that jeopardy attached at the oral sentencing. We disagree.

{12}     Our Supreme Court has previously recognized that "jeopardy attaches when the court

3

enters a judgment and imposes a sentence on the guilty plea." *Id.* ¶ 10. This is because entry of judgment and sentence carries with it an "expectation of finality." *Id.* ¶ 15.

> [T]he analytical touchstone for double jeopardy is the defendant's legitimate expectation of finality in the sentence, which may be influenced by many factors such as the completion of the sentence, the passage of time, the pendency of an appeal or review of the sentencing determination, or the defendant's misconduct in obtaining the sentence.

*State v. Hardesty*, 915 P.2d 1080, 1085 (Wash. 1996) (en banc).

{13} In our view, Defendant could not have formed an expectation of finality in the oral sentence. An oral sentence is not "a final judgment and is subject to change until reduced to writing." *State v. Rushing*, 103 N.M. 333, 334, 706 P.2d 875, 876 (Ct. App. 1985). As such, our Supreme Court has explained that "a trial court's oral announcement of a result is not final, and parties to the case should have no reasonable expectation of its finality." *State v. Lohberger*, 2008-NMSC-033, ¶ 20, 144 N.M. 297, 187 P.3d 162. Defendant acknowledges this law, but directs us to *State v. Porras*, 1999-NMCA-016, ¶ 14, 126 N.M. 628, 973 P.2d 880, where we held that the defendant had a reasonable expectation of finality in an oral pronouncement of sentence because the defendant had begun serving his sentence. For the reasons that follow, *Porras* is inapplicable here.

{14} As the State observes, Defendant has done nothing to explain how he began serving his sentence after the oral sentence was imposed beyond simply stating that he did so. *See Santa Fe Exploration Co. v. Oil Conservation Comm'n*, 114 N.M. 103, 108, 835 P.2d 819, 824 (1992) (stating that where a party fails to cite any portion of the record to support its factual allegations, appellate courts need not consider its argument on appeal). More critically, the oral sentence arose out of the plea agreement and, as we explain in the following section of this Opinion, Defendant made representations about making an immediate lump-sum restitution payment, a basis upon which the district court accepted the agreement. Later, Defendant either could not or would not provide that payment. Defendant could not have formed an expectation of finality in an oral sentence imposed pursuant to a plea agreement, the terms of which he either could not or would not keep. *See Rushing*, 103 N.M. at 335, 706 P.2d at 877 (holding that the defendant had no reasonable expectation of finality in a sentence obtained through misrepresentations at the time of sentencing). This conclusion is in line with other authorities. *Cf. Brown v. State*, 367 So. 2d 616, 623 (Fla. 1979) ("We hold, therefore, that the [D]ouble [J]eopardy [C]lause does not bar the reprosecution of an accused who willfully refuses to perform a condition of a guilty plea which has been accepted by the trial court on that basis."); 22 C.J.S. *Criminal Law* § 286 (2011) ("The Double Jeopardy Clause does not bar reprosecution of an accused individual who willfully refuses to perform a condition of a guilty plea.").

{15} We conclude that double jeopardy principles did not preclude the district court from ordering Defendant to stand trial. Double jeopardy did not attach at the time of the oral

sentencing. Thus, the district court's decision to require Defendant to stand trial did not implicate double jeopardy concerns. We turn now to the plea agreement and explain in greater detail why the court did not err in agreeing to withdraw the plea.

**B.        Withdrawal of the Plea Agreement**

**{16}**    Because the oral sentence was not final, we review the district court's decision to withdraw the plea only for an abuse of discretion. *See State v. Hunter*, 2005-NMCA-089, ¶ 20, 138 N.M. 96, 117 P.3d 254 ("A district court exercises its discretion when deciding whether to permit a pre-sentence plea withdrawal, and we review the court's ruling to determine whether, under the facts offered in support of the motion, the trial court abused its discretion." (internal quotation marks and citation omitted)), *aff'd*, 2006-NMSC-043, 140 N.M. 406, 143 P.3d 168. "A court abuses its discretion when it is shown to have acted unfairly, arbitrarily, or committed manifest error." *Id.* (internal quotation marks and citation omitted).

**{17}**    "A plea agreement is a unique form of contract the terms of which must be interpreted, understood, and approved by the trial court." *State v. Mares*, 119 N.M. 48, 51, 888 P.2d 930, 933 (1994). "In reviewing and interpreting the agreement a court should construe the terms according to what [petitioner] reasonably understood when he entered his plea." *Id.* (alteration in original) (internal quotation marks and citation omitted).

**{18}**    Defendant's plea agreement included the following provision: "[D]efendant agrees to make restitution on all charges. . . ." Our review of the record reveals that all parties—Defendant, the district court, and the State—understood this provision to require Defendant to make an initial and immediate lump-sum restitution payment. At the plea hearing, the court informed Defendant that the court's primary concern was to ensure that the victims of Defendant's crimes received maximum restitution. Jail time, the court explained, did little to achieve that objective, and the court had significant doubts about Defendant's ability to make incremental payments over time. The court believed that the plea agreement, as the court understood it, satisfactorily addressed its primary concern because it entailed Defendant making a substantial and immediate lump-sum payment. The Court's understanding that the restitution provision in the agreement entailed a lump-sum payment was not based on surmise or assumption but on Defendant's representations.

**{19}**    At the plea hearing—specifically, during plea recommendations and before the court accepted the plea—Defendant made the following statements:

| Defense Counsel: | Your honor, we, we, basically have spent a lot of time in trying to get this hammered out. I think that . . . [the plea is] a good resolution for everybody. We are, you know, we have the means over, you know, over the time period, to make the restitution. The intention has always been to make a, an initial lump-sum kind |
|---|---|

5

of based on . . . what the funds are available. I mean it's true, all the way back in January or February I made it clear that there was a finite amount of money and that it was impossible to both . . . try the case, and lawyer the case out, and pay restitution.

The Court:            What's the ballpark figure that you are talking about as far as an initial lump sum?

Defense Counsel:      You know, I need to speak with the person. I mean, you know, basically what we're looking at in terms of an initial lump sum would have been the original amount we had thrown out there was $125,000, but as time has gone along and there have been lawyer fees and everything else that cuts into the initial lump sum, and I just don't know what that is right now.

This excerpt refutes Defendant's contention that "[t]he first mention of an initial lump-sum restitution payment came *after* the plea agreement had been accepted by the court." After accepting the plea, the district court gave Defendant specific instructions regarding the lump-sum payment:

The Court:            Now this is what I want you to do. Between now and the time this case is over, so you now are under an obligation to make restitution.

Defendant:           Yes sir.

The Court:            Between now and the time you deal with Arizona, I want to see you through your lawyer try to access that money that you talked about and get that paid.

Defendant:           Okay. Can I say something? The money that he talked about was last December that we came up with the money. There's been horrendous expense over the last year. And we discussed this up front because I wanted to get the money. That's the money I wanted to get back in their pockets.

Defense Counsel:     But there's nonetheless . . .

The Court:            There is some available?

6

| | |
|---|---|
| Defendant: | Oh, sure, absolutely your honor. |
| The Court: | I don't want you to wait on making that payment. . . . In other words, tomorrow I want you to start your efforts. I know it's difficult from jail, but through your lawyer I want you to start your efforts in getting that money transferred so that restitution can be made, immediately. I mean, if you go to Arizona, and they give you another three months there for your felony there, I don't want these people to have to wait another five months. |
| Defendant: | I understand. |
| The Court: | So you start immediately. |
| Defendant: | I understand. That's my whole intention. |

**{20}** This interchange demonstrates that the plea agreement was premised on the understanding that Defendant would make a substantial and immediate lump-sum restitution payment. While this is not specifically stated in the agreement, the record supports the conclusion that Defendant reasonably understood that the restitution provision that is in the agreement entailed this type of lump-sum payment. Defendant was either unable or unwilling to make that payment and, thus, was unable to honor the terms of the agreement. The court did not abuse its discretion in withdrawing the plea.

## C. Jury Instructions

**{21}** Defendant next claims that the district court committed reversible error in denying several of his proposed jury instructions. We review each claimed error in turn but first establish our standard of review. "The propriety of jury instructions given or denied is a mixed question of law and fact." *State v. Lucero*, 2010-NMSC-011, ¶ 11, 147 N.M. 747, 228 P.3d 1167 (internal quotation marks and citation omitted). "[W]e review any factual questions under a substantial evidence standard[,] and we review the application of law to the facts de novo." *State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57 (internal quotation marks and citation omitted). "An appellate court reviews challenged jury instructions to determine whether they correctly state the law and are supported by the evidence introduced at trial." *Gonzales v. N.M. Dep't of Health*, 2000-NMSC-029, ¶ 28, 129 N.M. 586, 11 P.3d 550. "It is not error for a trial court to refuse instructions which are inaccurate." *State v. Salazar*, 1997-NMSC-044, ¶ 57, 123 N.M. 778, 945 P.2d 996. Our review also involves deciding "whether a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Cunningham*, 2000-NMSC-009, ¶ 14, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted). It is not error for a court to refuse an instruction that is confusing or misleading. *State v. Skipworth*, 64 N.M.

175, 178, 326 P.2d 669, 670-71 (1958). "[J]uror confusion or misdirection may stem not only from instructions that are facially contradictory or ambiguous, but from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134.

{22}   Defendant first argues that the district court erred in denying his proposed instruction defining the term "security." We review the facts underlying this claim. As noted, Defendant was charged with multiple securities violations including three counts of fraudulent practices in connection with the sale of securities, three counts of selling unregistered securities, and three counts of selling securities without a broker's license. One essential element common to all of these offenses is that "[D]efendant sold a security." Defendant proposed an instruction purportedly defining "security"; the suggested instruction read as follows:

### Essential Element of "Security" Defined

For you to find [D]efendant guilty of fraudulent practices in securities as charged in Count I, the State must prove beyond a reasonable doubt all of the elements that show that the instrument [D]efendant sold was a security.

An ownership interest in an LLC is a security if it is:

1.   An investment;
2.   In a common enterprise;
3.   With the expectation of profit; and
4.   To be derived through the essential managerial efforts of someone other than the investor;
5.   Unless context requires otherwise.

Here, a "common enterprise" means an enterprise in which the fortunes of the investor are interwoven with and dependent upon the efforts and successes of those seeking the investment or of a third party;

OR

1.   An investment by which an offeree furnishes initial value to an offeror;
2.   A portion of this initial value is subjected to the risks of the enterprise;
3.   The furnishing of the initial value is induced by the offeror's promises or representations;
4.   Which give rise to a reasonable understanding that a valuable benefit of some kind over and above the initial value will

8

accrue to the offered;

5.      As a result of the operation of the enterprise; and

6.      The offeree does not receive the right to exercise practical and actual control over the managerial decisions of the enterprise;

7.      Unless context requires otherwise.

Each transaction must be analyzed on the basis of the content of the instruments in question, the purposes intended to be served, and the factual setting as a whole.

The law provides that "context requires otherwise" where the parties have a unique agreement, the instruments do not have equivalent value to most persons, the instruments could not be traded publicly, and the purchaser is motivated by a desire to use or consume an item purchased.

If you find that "context otherwise requires" then the instrument is not a security, and you must find [Defendant] not guilty of fraudulent practices in securities.

The Court denied this instruction and, after consulting with the parties and reviewing UJI 14-4310 NMRA (defining "security"), issued the following instruction:

A "security" is a [sic] ownership right or a creditor relationship and includes any investment contract and a limited liability company interest.

1.      Any investment contract means a contract:

a.      Where an individual invests his money;

b.      In an undertaking or venture of two or more people or entities;

c.      With an expectation of profit;

d.      Based primarily on the efforts of others.

2.      A limited liability company interest means a member's or assignee's right to receive distributions and a return of capital from the limited liability company[;]

3.      Unless the context requires otherwise.

An investment is the use of capital or money to create more money.

Defendant claims that the "court committed reversible error when it denied [his] tendered instruction on the definition of a security." We disagree.

{23}    We agree with the State's assessment that Defendant's proposed instruction is both misleading and unclear. Although the instruction is titled "security defined", the instruction does not actually define the term. Rather, it purports to identify the circumstances under

9

which an interest in a limited liability company constitutes a security. Moreover, the bulk of the instruction focuses not on the meaning of "security," but on the meaning of "common enterprise." Finally, the sheer breadth of the instruction is troubling. We conclude that the instruction had great potential to misdirect and confuse the jury. *See State v. Barber*, 2004-NMSC-019, ¶¶ 19-20, 135 N.M. 621, 92 P.3d 633; *State v. Rodarte*, 2011-NMCA-067, ¶¶ 11-14, 149 N.M. 819, 255 P.3d 397, *cert. denied*, 2011-NMCERT-005, 150 N.M. 666, 265 P.3d 717; *Berry v. Fed. Kemper Life Assurance Co.*, 2004-NMCA-116, ¶ 79, 136 N.M. 454, 99 P.3d 1166.

**{24}**   Moreover, the proposed instruction is not a correct statement of the law. In the definitions section of the New Mexico Securities Act of 1986, "security" is defined as follows: "unless the context requires otherwise, 'security' means . . . any interest in a limited liability company[.]" Section 58-13B-2(X). There is no dispute that Defendant sold interests in a limited liability company. The statute provides that such an interest constitutes a security, unless the context requires otherwise.

**{25}**   Defendant emphasizes the phrase "unless the context requires otherwise" and asserts that a jury must apply the "investment contract test" set out in *S.E.C. v. W.J. Howey Co.* (*Howey*), 328 U.S. 293 (1946) to determine whether an interest in a limited liability company is a security under the New Mexico Securities Act of 1986. In *Howey*, the United States Supreme Court examined the scope of the definition of "security" in the federal Securities Act of 1933, 15 U.S.C. §§ 77a to 77aa (1933, as amended through 2000). *Howey*, 328 U.S. at 294. The federal act expressly defined "security" to include an investment contract. *Howey*, 328 U.S. at 297. The issue before the Court was whether a land sales contract, a warranty deed, and a service contract together constitute an investment contract. *Id.* The Court answered this question in the affirmative and, in doing so, adopted what Defendant refers to as the "investment contract test" so as to bring within the ambit of that Act the "many types of instruments that in our commercial world fall within the ordinary concept of a security." *Id.* at 299 (internal quotation marks and citation omitted). Defendant's argument that *Howey* and the investment contract test are relevant here ignores significant differences between the definition of "security" in the federal Securities Act of 1933 and the New Mexico Securities Act of 1986.

**{26}**   As stated above, the New Mexico statute defines an interest in a limited liability company as a security, unless the context requires otherwise. The definition under the federal statute is substantially different, in that it expressly includes investment contracts in its definition. With this difference in mind, we fail to see how *Howey* and the federal Securities Act of 1933 offer any guidance here. In addition, we have previously held that the term "security" in the New Mexico Securities Act of 1986 was intended to be construed broadly and that it is error to advocate a construction that narrows its applicability. *State v. Sheets*, 94 N.M. 356, 360, 610 P.2d 760, 764 (Ct. App. 1980). Such a narrow construction is precisely what Defendant advocates here. We recognize that the New Mexico statute definition allows consideration of the context, and our analysis should not be understood as an attempt to strip the phrase "unless the context requires otherwise" of any meaning. We

simply conclude that this language does not have the meaning Defendant suggests—i.e., that the court was required to instruct the jury that it was to apply the investment contract test stated in *Howey* to determine whether the interests in the LLC that Defendant sold were securities.

{27} We conclude that the district court did not err in denying Defendant's instruction defining "security." That instruction was both confusing and legally inaccurate.

{28} Defendant's second argument is that the court wrongly denied his proposed instructions relating to the charges of the sale of unregistered securities. As noted, Defendant was charged with three counts of selling unregistered securities in violation of Section 58-13B-20. This statute provides the following:

> It is unlawful for a person to offer to sell or sell any security in New Mexico unless:
>
> A.      the security is registered under the New Mexico Securities Act of 1986 [Chapter 58, Article 13B NMSA 1978];
> B.      the security or transaction is exempt under that act; or
> C.      the security is a federal covered security.

Section 58-13B-20(B). The district court issued three identical instructions, one for each of the three counts charged, setting out the elements of the crime of selling unregistered securities. The court's instruction precisely tracks the language of the uniform instruction for this offense. *See* UJI 14-4301 NMRA. The instruction the court issued states:

> For you to find [D]efendant guilty of the sale of unregistered securities, as charged in Count[s] 2 [5, and 8], the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1.      [D]efendant sold a security;
> 2.      The security was required by the state securities law to be registered with the State of New Mexico prior to the sale;
> 3.      The security was not registered as required by the state securities law;
> 4.      This happened in New Mexico on [various dates].

{29} Defendant proposed an elements instruction that differed from this instruction and the UJI in that it included as an essential element, adding a requirement that "[t]he sale of the security was not an exempt transaction[.]" He also proposed an instruction setting out what constitutes an "exempt transaction". This instruction informed the jury that if it found Defendant sold securities in the course of exempt transactions, it must acquit him of the crime of selling unregistered securities. This latter instruction was based on UJI 14-4321

11

NMRA, which courts are instructed to issue if a defendant alleges an exempt sale, and Section 58-13B-27(K), which governs the circumstances under which the sale of a security "by a limited liability company" constitutes an exempt transaction.

{30}   The district court denied both instructions. The court observed that Defendant's proposed elements instruction deviated from the UJI and further noted that Defendant was not entitled to the other instruction because the issue of exemption was never raised at trial. On appeal, Defendant claims this ruling was in error. He argues that he was entitled to any instruction for which there was sufficient evidence and that failure to instruct a jury on a defendant's theory of the case is reversible error.

{31}   We find no error in the district court's decision to reject Defendant's elements instruction. "When a uniform jury instruction exists, that instruction must be used without substantive modification." *State v. Caldwell*, 2008-NMCA-049, ¶ 24, 143 N.M. 792, 182 P.3d 775. As to the district court's decision to reject Defendant's instruction defining what constitutes an exempt transaction, we observe that Defendant correctly states the rules regarding a defendant's entitlement to instructions. *See State v. Gaines*, 2001-NMSC-036, ¶ 6, 131 N.M. 347, 36 P.3d 438 ("As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." (internal quotation marks and citation omitted)); *State v. Trammel*, 100 N.M. 479, 481, 672 P.2d 652, 654 (1983) ("When evidence at trial supports the giving of an instruction on a defendant's theory of the case, failure to so instruct is reversible error."). However, as the district court observed, at trial Defendant did not advance the theory that the securities at issue were sold during an exempt transaction. The record amply demonstrates this point.

{32}   The court expressed surprise when it learned Defendant was requesting an instruction on the exempt transaction issue and stated "[b]ut you're not claiming that." Defendant responded, "Actually, we are." The court replied, "I didn't hear any evidence of that" and then posed the following question to Defendant: "I thought the only evidence we received was that this was not a security; not that it was an exempt security." Defendant responded "I think Your Honor is characterizing correctly the gist of our defense at trial." Nevertheless, Defendant insisted that "I do think there's facts to support the exemption" and that "there's enough information on this record for us to give the defense to the [j]ury." The court disagreed and responded that Defendant "didn't argue [that point] at all in his opening" and further stated that Defendant failed to ask the expert witnesses any questions about whether the transaction qualified as exempt. The State agreed and noted its opposition to the inclusion of the exemption issue in the instructions. The court concluded by stating, "I think there's no evidence to support that [exemption] was ever an issue raised by anybody" and therefore denied the instruction that defined exempt transactions.

{33}   Defendant conceded that his trial theory was exclusively that the interests sold were not securities. This concession adequately supports the district court's determination that the issue of exemption was not raised at trial. Having failed to raise the issue of exemption

12

at trial, Defendant is not entitled to an instruction on the issue. *See State v. Skippings*, 2011-NMSC-021, ¶ 10, 150 N.M. 216, 258 P.3d 1008 ("A defendant is entitled to an instruction on his or her theory of the case." (internal quotation marks and citation omitted)); *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 ("Failure to instruct the jury on a defendant's theory of the case is reversible error only if the evidence at trial supported giving the instruction."). We hold that the court did not err in denying Defendant's proposed instruction setting out what constitutes an exempt transaction.

## D.     Sufficiency of the Evidence

{34}     Defendant next claims that "[t]here was insufficient evidence to support [his] convictions." He first challenges the evidence related to the nine securities convictions and then addresses the evidence related to his racketeering conviction. We address his arguments in turn and start with standard of review. "When evaluating the sufficiency of evidence to support a conviction, we view the evidence in the light most favorable to the [s]tate, resolving all conflicts and indulging all permissible inferences to uphold a verdict of conviction." *State v. Castillo*, 2011-NMCA-046, ¶ 24, 149 N.M. 536, 252 P.3d 760 (internal quotation marks and citation omitted), *cert. denied*, 2011-NMCERT-004, 150 N.M. 648, 264 P.3d 1171. "We measure the sufficiency of the evidence against the jury instructions." *Id.*

{35}     A closer examination of Defendant's sufficiency arguments related to his securities convictions reveals that Defendant repeats an argument he has previously made. He argues for the second time that the phrase "unless the context requires otherwise" in the definition of the term "security" in the New Mexico Securities Act of 1986 required the jury to apply the investment contract test set out in *Howey* to determine whether the LLC interest Defendant sold was a security. Defendant claims that the jury was not so instructed and did not perform this analysis. As such, he claims that the evidence was insufficient to support the securities convictions. We have already determined that the *Howey* test and the federal statute from which it is derived are inapposite here. We proceed to the sufficiency arguments concerning the racketeering charge.

{36}     The jury was instructed that the essential elements of racketeering include the following:

> 1.     . . . Defendant was associated with an enterprise, namely, The Santa Fe Market.
> 2.     While associated with that enterprise, . . . Defendant intentionally, and, directly or indirectly, participated or conducted the affairs of the enterprise by engaging in a pattern of racketeering activity.
> 3.     The pattern of racketeering activity includes two or more of the crimes of:
>> A.     Securities Fraud as charged in Counts 1, 4, and 7;
> 4.     This happened in New Mexico on or between December 17, 2003, and April 22, 2004.

13

Defendant first argues that if we find insufficient evidence to support Defendant's convictions for fraudulent practices in connection with the sale of securities, we must vacate the racketeering conviction. We have rejected Defendant's contention that there is insufficient evidence to support his varying securities convictions. This argument is unavailing.

**{37}** Defendant then argues that the State failed to prove "the existence of an enterprise with which [Defendant] associated." We disagree. The New Mexico Racketeering Act defines the term "enterprise" as "a sole proprietorship, partnership, corporation, business, labor union, association or *other legal entity . . .*" NMSA 1978, § 30-42-3(C) (2009) (emphasis added). A limited liability company is a legal entity. *See Martinez v. Roscoe*, 2001-NMCA-083, ¶ 7, 131 N.M. 137, 33 P.3d 887 ("State courts have also required artificial legal entities, including limited liability companies, to be represented by a licensed attorney."). We are persuaded that there was sufficient evidence to establish Defendant associated with an enterprise; namely, the Santa Fe Market. We proceed to the final issue on appeal.

## E. Evidentiary Issue

**{38}** Citing Rule 11-404(B) NMRA, Defendant contends that the court erred in allowing the State to "introduce evidence of his prior convictions, some of which were [more] than ten years old." The State responds that we need not reach the merits of this claim because Defendant failed to adequately develop it. We agree with the State.

**{39}** This portion of Defendant's brief does not explain the factual underpinnings of his argument. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments."). Our independent review of the record reveals that Defendant filed a motion to exclude evidence of convictions and prior bad acts not related to fraud, and a motion to exclude evidence of convictions and prior bad acts more than ten years old. Defendant has not explained what the court decided regarding these motions or what evidence of his prior convictions was admitted.

**{40}** Moreover, we observe that Defendant also filed a motion to limit references to his prior convictions to fact of conviction and crime. There, he concedes that his prior fraud and forgery convictions are admissible, notwithstanding Rule 11-404(B), as evidence of these convictions is an essential element of the three counts of fraudulent practices in connection with the sale of securities with which he was charged. Defendant has not explained how we are to make sense of these conflicting motions. In addition, we observe that evidence of prior bad acts "is admissible under Rule [11-404(B)] if it is probative of a material element at issue." *State v. McGhee*, 103 N.M. 100, 104, 703 P.2d 877, 881 (1985).

**{41}** We hold that Defendant has not sufficiently developed the contention that the district court admitted evidence in violation of Rule 11-404(B). We decline to further review the

14

matter. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to entertain a cursory argument that relied on several factual assertions that were made without citation to the record).

**CONCLUSION**

**{42}**   For the foregoing reasons, we affirm Defendant's conviction on all counts.

**{43}    IT IS SO ORDERED.**

---

                        **CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

---

**MICHAEL D. BUSTAMANTE, Judge**

---

**LINDA M. VANZI, Judge**

**Topic Index for *State v. Soutar*, No. 28,167**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SB | Substantial or Sufficient Evidence |
| | |
| **CM** | **COMMERCIAL LAW** |
| CM-FU | Fraud |
| CM-SE | Securities |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DJ | Double Jeopardy |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-FR | Fraud |
| CL-RK | Racketeering |
| CL-SO | Securities Offences |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-DJ | Double Jeopardy |
| CA-FO | Final Order |
| CA-HC | Habitual Criminal |
| CA-JS | Judgment and Sentence |
| CA-JI | Jury Instructions |

CA-PP        Plea and Plea Bargaining
CA-PC        Prior Convictions
CA-RP        Reinstatement of Proceedings
CA-RE        Restitution
CA-SN        Sentencing
CA-SE        Substantial or Sufficient Evidence
CA-SS        Suspended Sentence

**EV**        **EVIDENCE**
EV-PC        Prior Convictions or Judgments

**JI**        **JURY INSTRUCTIONS**
JI-CJ        Criminal Jury Instructions
JI-FG        Failure to Give or Request